**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carlos SAUNDERS,**
**Defendant–Appellant.**

No. 89–5019.

United States Court of Appeals,
Fourth Circuit.

Argued July 13, 1989.

Decided Sept. 14, 1989.

Thomas Durbin Hughes, IV, for defendant-appellant.

Erika W. Nijenhuis, Sp. Asst. U.S. Atty., Rockville, Md. (Henry E. Hudson, U.S. Atty., Arlington, Va., on brief) for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.

ERVIN, Chief Judge:

Carlos Saunders appeals his convictions for assault and possession of contraband, alleging error by the trial court in refusing to admit certain defense exhibits and insufficient evidence to support the jury verdict. Finding that the jury had sufficient evidence to convict Saunders and that the trial court's contested evidentiary rulings were, at worst, harmless error, we affirm appellant's conviction.

In April, 1989, the defendant-appellant, Carlos Saunders, an inmate at the District of Columbia correctional facility in Lorton, Virginia, was involved in an altercation with a fellow inmate, Silas Holt. During this fight Saunders stabbed Holt twice, once in the left side and once in the stomach, and cut Holt's arm. As a result of the stabbing Saunders was charged with assault with intent to murder in violation of 18 U.S.C. § 113(a), and possession of contraband capable of causing death or bodily injury, in violation of 18 U.S.C. § 13, assimilating Va.Code § 53.1–203(4).

Saunders was tried by jury and was convicted of assault with intent to inflict bodily harm, and possession of the contraband. The trial court sentenced him to 70 months on the assault charge, and six months on the contraband charge, with the sentences to run concurrently with each other and consecutive to any previously imposed sentences.

I. *Evidence*

The evidence presented at trial was primarily testimonial. Holt testified that on the day of the altercation he had gone to Saunders' dorm room and requested a pair of shoes from Saunders which Holt believed belonged to him. Saunders told Holt that he possessed only an old pair of tennis shoes, which were under his bed. When Holt attempted to look under Saunders' bed, however, Saunders ordered him to leave.

Holt further testified that he returned to his dorm room and talked with a fellow inmate, Anthony Whitehead, about this conversation. He asked Whitehead to obtain a "shank" for him, because he feared

Saunders would attack him. Whitehead refused, and advised Holt to drop his quest for the shoes. Holt and Whitehead then began gambling with several other inmates in their dorm. During the game Saunders entered the dorm room, walked up to Holt, and pulled out a "foot long knife," and stabbed Holt in the side and stomach. Holt then jumped over a bed in an attempt to evade Saunders. As the victim fled, Saunders cut Holt's arm, and pursued him with the knife.

Anthony Whitehead, another Lorton inmate, also testified at trial, and his testimony corroborated that of Holt.

At trial Saunders presented a claim of self-defense, and offered his testimony as support for this theory. Saunders denied possessing any shoes belonging to Holt, and testified that when Holt came to see him about the shoes, the victim made unwanted sexual advances toward him. As a result of this overture, Saunders told Holt to leave. Later that day, as Saunders was playing basketball in the recreation yard, Holt approached him and pulled a knife. When Saunders grabbed that knife from the victim, Holt pulled out a second knife. Holt then charged Saunders, and Saunders closed his eyes and stabbed the victim twice. According to Saunders, he stabbed Holt primarily because he feared Holt was going to rape him. Appellant further stated that, after the stabbing, he dropped the knife and returned to his dorm room.

Mike Miller, Saunders' cell mate, corroborated appellant's testimony with respect to the earlier incident concerning the shoes, and the fact that Holt made a pass at him. He further testified that Holt was known around Lorton's Central facility for making repeated homosexual advances toward other inmates. The allegations regarding Holt's unwanted sexual advances were further corroborated by the testimony of Kenneth Barnes, another Lorton inmate.

## II. *Evidentiary Rulings*

Prior to trial, counsel for both the government and Saunders stipulated that various defense exhibits, including Defense Exhibits Numbers 1 and 6, were accurate and correct copies of the originals and were records maintained and kept as normal and customary business records by the D.C. Department of Corrections and the FBI.

### A. Exhibit 1

Defense Exhibit # 1 was a report prepared by FBI Special Agent Martin Allevy, summarizing his interview with Anthony Whitehead which took place soon after the stabbing. Defense counsel attempted to offer this exhibit into evidence either: (1) as substantive evidence, to prove the truth of Whitehead's statements, or (2) as a tool to impeach Whitehead's in-court testimony. The court refused to admit the exhibit on the grounds that it was an investigative report, rather than a business record kept in the normal course of business, and therefore did not fall within an exception to the hearsay rule. The court also noted that the relevancy of the report appeared questionable.

Federal Rule of Evidence 803(6) provides that records kept in the normal course of business constitute an exception to the hearsay rule. Relying on the pretrial stipulation, which stated that Exhibit 1 was in fact a business record, Saunders sought to introduce the report pursuant to Rule 803(6). The government succeeded in having the report excluded, however, by arguing "that although entries in a police or investigating officer's report which result from the officer's own observations and knowledge may be admitted [under Rule 803(6) ], statements made to the officer by third parties under no business duty to report may not." *United States v. Snyder,* 787 F.2d 1429, 1434 (10th Cir.1986) (Holding that statements attributed to inmates in written report of investigating officer as to another inmate's connection with a weapon seized in a federal prison was inadmissible under Rule 803(6)). We agree that, in the absence of the stipulation, the report would not have been admissible under Rule 803(6). *See United States v. Pazsint,* 703 F.2d 420, 424 (9th Cir.1983); *Meder v. Everest & Jennings, Inc.,* 637 F.2d 1182, 1186–87 (8th Cir.1981); *United States v. Yates,* 553 F.2d 518, 521 (6th

Cir.1977); *United States v. Smith*, 521 F.2d 957, 964 (D.C.Cir.1975). The existence of the stipulation, however, leads us to conclude that the document should have been admitted.

The defense attorney, who both tried the case and argued it on appeal, stated to this panel that when he entered into the stipulation, he sincerely believed that the government was conceding the admissibility of this report. In reading the stipulation, we can certainly understand how defense counsel arrived at such a conclusion. The stipulation clearly stated that defense exhibits 1–6 "are records that are maintained and kept as normal and customary business records." A reasonable interpretation of that statement is that it represents the government's agreement that those exhibits were admissible pursuant to Rule 803(6). Once the case reached trial, however, the prosecution argued that it had simply stipulated that someone could testify, without objection from the government, that the report was a true and accurate business record. Why defense counsel would have bothered to obtain such a stipulation, however, escapes us, as it would have served little, if any, purpose.

Because, absent exceptional circumstances, pretrial stipulations are binding upon the parties who make them, *see United States v. Gwaltney*, 790 F.2d 1378 (9th Cir.1986), we agree with Saunders that the report was in fact admissible. To hold otherwise, we fear, would encourage the government to engage in the less than scrupulous practice of entering into arguably ambiguous pretrial stipulations, and then arguing at trial that "what the stipulation said is not what we meant." We further find, however, that the trial court's failure to admit the exhibit constitutes harmless error. At the time Saunders sought to introduce the report, Whitehead had already testified and been cross-examined concerning the matters discussed in the document. His testimony accurately reflected the statements attributed to him therein, and it neither added to nor omitted anything from the information contained in the report. Indeed, in this sense, admission of the report could have only harmed Saunders, as it would have corroborated and therefore strengthened Whitehead's testimony.

Finally, because there existed no discrepancies between Whitehead's testimony and the statements attributed to him in the FBI report, the document could not have been used to impeach Whitehead.

### B. Exhibit 6

Saunders also argues that the trial court abused its discretion in refusing to admit Defense Exhibit # 6. This exhibit was a prison evaluation report of Holt, made at the time Holt was admitted to Lorton. In that report, Holt admitted his "heavy use" of cocaine, heroin, methadone, and amphetamines. The report also noted:

> The personality picture of Mr. Silas Holt that emerges from testing is one of an extremely dependent and regressive individual who is experiencing feelings of insecurity and inadequacy. He appears to have confusion with regard to sexual role identity in addition to poor impulse control.

On appeal Saunders claims that he sought to introduce the prison committee evaluation of Holt for two purposes: (1) to impeach Holt's testimony regarding his own drug use; and (2) to prove Holt's homosexual tendencies.

■ The record makes clear that at trial defense counsel sought to cross-examine Holt on the basis of the prison committee evaluation concerning his drug use. The district court properly refused to allow this, however, as Holt had admitted on the stand that he was a "recovering drug addict" who used marijuana, cocaine, heroin, and methadone. We note that Holt, in his testimony, downplayed his drug use somewhat, while the report described his drug use as "heavy." It still appears, however, that the report would have been of little use as an impeachment tool, given Holt's admission that he was a recovering addict. Addiction, by its nature, implies heavy use.

■ It is not clear from the record whether Saunders also sought to introduce

the evaluation to prove Holt's homosexual tendencies, and thereby corroborate his self-defense claim. Assuming, *arguendo*, that Saunders did attempt to introduce the report for that purpose, we do not agree with the government's assertion that the evaluation should have been excluded on Rule 403 relevancy grounds.

The attribution to Holt of homosexual tendencies by a neutral and official committee would have lent far more credence to Saunders' defense claim that this was a homosexually related incident. Although two other Lorton inmates, Miller and Barnes, testified regarding Holt's homosexual tendencies, and in particular, his conduct toward Saunders, their credibility was called into question on cross-examination.

Even if Saunders could have proved that this was an incident stemming from Holt's unwanted sexual advances toward him, however, that does not change the eyewitness testimony of Whitehead, that Saunders attacked Holt. For this reason, the absence of the prison committee's evaluation no doubt constitutes harmless error.

### III. *Sufficiency of the Evidence*

In reviewing the sufficiency of the evidence to support a conviction, the relevant question is "whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir.1982). As noted above, the evidence in this case was almost entirely testimonial. Whitehead and Holt corroborated the government's theory of the case, while Saunders' testimony supported his claim of self-defense. The jury obviously chose to believe Whitehead and Holt.

Given the lack of any real deficiency in the evidence, this court is bound by the "credibility choices of the jury." *See United States v. Arrington*, 719 F.2d 701, 704 (4th Cir.1983) ("We, of course, do not weigh the evidence or review the credibility of witnesses in resolving the issue of substantial evidence."); *United States v. Hines*, 717 F.2d 1481, 1491 (4th Cir.1983) ("Al-

though [defendant] offered her own version of events, the jury apparently did not accept her story, and viewing the evidence favorably toward the government, her conviction must stand.").

We therefore affirm Saunders' convictions.

AFFIRMED.