898 F.2d 148
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Thomas HALL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lisa INSLEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carin GAMBLE, Defendant-Appellant.
 Nos. 89-5582, 89-5583 and 89-5588.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Dec. 28, 1989.
Decided: Feb. 20, 1990.
 
 Appeals from the United States District Court for the District of South Carolina, at Greenville. G. Ross Anderson, Jr., District Judge. (CR-88-233).
 William H. Ehlies, II, William H. Ehlies, P.A., Greenville, South Carolina; Robert Simels, New York City, Herbert Shafer, Atlanta, Georgia, for appellants.
 E. Bart Daniel, United States Attorney, William C. Lucius, Assistant United States Attorney, Greenville, South Carolina, for appellee.
 D.S.C.
 AFFIRMED.
 Before CHAPMAN, WILKINSON and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 John Hall, Carin Gamble, and Lisa Insley appeal their convictions in the United States District Court for the District of South Carolina pursuant to an eight-count indictment charging various drug possession and distribution offenses. Hall argues that the evidence is insufficient to sustain his conviction for possession with intent to distribute heroin (Count Two) and possession with intent to distribute cocaine (Count Three). He also challenges his sentence under the sentencing guidelines and argues that he was effectively denied bail. Gamble raises a Fifth Amendment due process challenge to the district court's refusal to grant her motion to sever her trial from that of defendant Hall. Insley argues that the evidence is insufficient to sustain her conviction of conspiracy to possess with intent to distribute heroin (Count One) and use of the telephone to facilitate said conspiracy (Count Four). She also alleges as grounds for reversal ineffective assistance of counsel and plain error in the district court's charge to the jury. We find appellants' contentions without merit and affirm the judgments of conviction.
 
 I.
 
 2
 On July 19, 1988, the grand jury returned an eight-count indictment against Hall, Gamble, and Insley. All three defendants were named in one count of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. Sec. 846. Hall and Gamble were named in one count of possession with intent to distribute heroin in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B), and 18 U.S.C. Sec. 2, and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(C) and 18 U.S.C. Sec. 2. Insley was named in one count of using a telephone to facilitate a heroin conspiracy in violation of 21 U.S.C. Sec. 843(b). Hall was named in one count of submitting a false income tax return in violation of 26 U.S.C. Sec. 7206(1). He pled guilty to this count.
 
 
 3
 The testimony at trial tended to show the following: On October 2, 1987, a maintenance worker who was trying to locate the source of water leakage entered apartment 92, Bent Oaks Apartments, Greenville, South Carolina, and observed capsules, triple beam scales, and bags containing white powder. A search warrant executed at the apartment, which was apparently abandoned, revealed a bag marked "ZABAR'S" containing fifteen individual packets of heroin and two of cocaine; a bag containing empty capsules; a suitcase marked "Hall" and containing an airline boarding pass for "John Hall," traces of heroin, and eight packs of mannitol (a common cutting agent for cocaine and heroin); a spoon and three strainers containing traces of cocaine; two triple beam scales; a large quantity of plastic storage bags, and various papers including, inter alia, an address book containing Insley's parents' telephone number and airline tickets with the names "Carin Gamble" and "Carin Hall." At trial, an FBI fingerprint technician testified that Hall's fingerprints were found on the ZABAR's bag, the triple beam scales, and on an airline ticket, utility bills, and other loose papers found in the apartment. Gamble's prints were found on a bankcard application and Hall's and Gamble's prints on two airline timetables which were also recovered in the search.
 
 
 4
 Bhoomjai Bunnark ("Alex"), a government informant and admitted heroin dealer, testified that he met with Hall in Atlantic City in May 1985 through a heroin customer.[1] Bunnark traveled to Greenville with Hall who took him to the Bent Oaks Apartments. Bunnark further testified that Hall introduced him to his girlfriend Carin, who "did business for [Hall]." After Bunnark was arrested on a heroin conspiracy charge, he began cooperating with the Drug Enforcement Administration.
 
 
 5
 In September 1986 Bunnark attempted to set up a heroin deal with Hall. In December 1987 a woman identifying herself as "Gail Smith" contacted Bunnark at the number he had given to Hall, a Drug Enforcement Administration undercover telephone. The government offered testimony that the woman who identified herself as "Gail Smith" was Lisa Insley. A search of Insley's apartment revealed notations of phone numbers for "Alex Bunnark" and "Greg," the name used by the DEA undercover agent working with Bunnark. Pursuant to a series of recorded telephone calls, a heroin deal was arranged between the DEA agent, Hall and Bunnark. The deal was ultimately consummated in Los Angeles on January 22, 1988.
 
 
 6
 The government offered evidence that on January 17, 1986, Gamble was stopped in the Atlanta Airport, while en route from Greenville to Los Angeles, traveling under the name "K. Morris." A consensual search of her luggage revealed $105,990 in cash. Gamble testified at trial that she was taking what she thought to be only $12,000 to Hall in Los Angeles. A consensual search of Hall's luggage on January 27, 1987, in the Los Angeles Airport after a flight from Greenville revealed $85,000 in cash. Hall had claimed that he was carrying $15,000 in cash in order to book gospel groups at a meeting with an agent called Resnick. However, Resnick testified that he had no appointment with Hall on January 27, 1987, and that his agency did not take cash.
 
 
 7
 The government also offered evidence from various telephone and pager records during the period of the alleged conspiracy that revealed phone calls from Hall's and Gamble's home phones to Bunnark's and Thanaranjakool's pager numbers, calls from Gamble's home number to Los Angeles and Atlantic City hotels, and calls from Insley's home phone to the DEA undercover phone and Bunnark's pager number. Insley and Gamble elected to testify at trial. Defendant Hall did not take the stand.
 
 
 8
 The jury found defendants guilty as charged. In an order entered on December 15, 1988, the court denied all of defendants' post-trial motions except Gamble's Fed.R.Crim.P. 29 motion relative to the count of possession with intent to distribute cocaine. Gamble's conviction on this count was set aside. This appeal followed.
 
 II.
 
 9
 Defendant Hall contends that he should have been given a two level reduction for accepting responsibility at the sentencing hearing and pleading guilty to one count of submitting a false income tax return, that he should not have received a two level enhancement as an organizer, leader, manager, or supervisor, and that his sentence should have been adjusted downward because he had no criminal history, had a good military record and acknowledged his guilt. See United States Sentencing Commission Guidelines, 18 U.S.C.A.App. Secs. 3E1.1(a), 3B1.1(c), 5K2.0 (1989 Supp.). These contentions are without merit.
 
 
 10
 Sentencing determinations by the district court are entitled to special deference because of its unique opportunity "to judge the credibility of the witnesses." 18 U.S.C. Sec. 3742(e) (1988); United States v. White, 875 F.2d 427, 430-31 (4th Cir.1989). Here, the district court concluded, based upon testimony at the sentencing hearing including Hall's own statements, that defendant Hall had not taken responsibility for his conduct. The court further concluded that Hall had acted as supervisor of the conspiracy by directing the phone calls and the exchange of money. After a careful review of the record we cannot say that the court's conclusions under the applicable sentencing guidelines are clearly erroneous. See White, 875 F.2d at 431 (whether to apply Sec. 3E1.1 is a factual issue reviewable under the clearly erroneous standard); United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989) (factual determination of whether defendant was a major participant in the criminal activity is reviewed under the clearly erroneous standard).
 
 
 11
 Similarly, the district court's refusal to depart downward on defendant's sentence was in no sense improper. The court apparently concluded that Hall's unexceptional military service and the absence of prior convictions was not enough to merit sentence reduction for a defendant who was "one of the largest, if not the largest cocaine dealer in the area."[2] We likewise refuse to disturb defendant Hall's thirty-year sentence for Counts Two, Three and Eight as it is well within the applicable statutory range. See United States v. Schocket, 753 F.2d 336, 341 (4th Cir.1985) (sentences within statutorily allowed limits reviewed only in "extraordinary circumstances").
 
 
 12
 Defendant Hall also challenges the terms of his pretrial bail determination. However, he offers only conclusory assertions that the terms of his bail were unreasonable and that his pretrial detention prejudiced his defense. Moreover, his bond was originally set at $500,000 and was reduced to $150,000. Given the seriousness of the offense in this case, we find that the district court's determination not to further reduce defendant's bail was entirely proper. See United States v. Williams, 753 F.2d 329, 333 (4th Cir.1985).
 
 
 13
 Finally, defendant Hall's contention that there is insufficient evidence to convict him under Counts Two and Three is also without merit. Hall's main objection is that the fingerprint expert could not fix the age of Hall's fingerprints found on drug paraphernalia and on a bag containing smaller bags of heroin and cocaine which were recovered from the Bent Oaks Apartments. However, proof of the age of the fingerprints is not essential to the government's argument that Hall used the apartment to stash and package supplies of drugs. Moreover, defendant's claim ignores other evidence that overwhelmingly connects Hall with the items seized at the Bent Oaks Apartments. Our review of the evidence in the light most favorable to the government convinces us that a "rational trier of fact could have found [defendant Hall] guilty beyond a reasonable doubt" under Counts Two and Three. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989) (quoting United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982)).
 
 III.
 
 14
 Defendant Gamble argues that the district court erred in refusing to sever her trial from that of defendant Hall because he would have testified in her behalf at a later trial. We disagree. As a general rule, criminal defendants jointly indicted in an alleged conspiracy should be tried together. See United States v. Parodi, 703 F.2d 768, 779 (4th Cir.1983); United States v. Santoni, 585 F.2d 667, 673 (4th Cir.1978). In order to merit severance a defendant must show more than "merely that a separate trial would offer him a better chance of acquittal." Parodi, 703 F.2d at 780. Where, as here, severance is sought on the grounds that a co-defendant's testimony is needed, Gamble must establish: (1) a bona fide need for the testimony; (2) the likelihood that Hall would testify at a later trial; (3) the substance of Hall's testimony; and (4) the exculpatory nature of such testimony. See id. Gamble has not met her burden in this respect. Even if the record showed that Gamble had a bona fide need for Hall's testimony, the record contains no assurance that Hall would in fact testify and no showing as to the substance and exculpatory nature of his testimony.
 
 IV.
 
 15
 Defendant Insley contends that the trial court committed plain error in its charge to the jury in connection with instructions as to the presumption of innocence and burdens of proof. However, Insley never objected to these instructions. In the context of failure to object, the plain error doctrine should be applied only where a miscarriage of justice would otherwise result. United States v. Young, 470 U.S. 1, 15 (1985). Taking the jury instructions as a whole, we do not find this to be one of the rare cases where the doctrine of plain error should be applied. Id.
 
 
 16
 Insley also raises a claim of ineffective assistance of counsel. Such claims should first be presented to the district court in 28 U.S.C. Sec. 2255 proceedings except where the alleged ineffective assistance is readily apparent on the trial record. See United States v. Grandison, 783 F.2d 1152, 1156-57 (4th Cir.1986); United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir.1970). This is not such a case. In any event, Insley's allegations of ineffective assistance of counsel amount to no more than a general criticism of defense counsel's representation without taking into consideration "the distorting effects of hindsight." Strickland v. Washington, 466 U.S. 668, 689 (1984). Appellant concedes that none of counsel's alleged deficiencies taken individually would have affected the outcome of the trial. Similarly, we cannot say that defense counsel's performance taken as a whole was so deficient that, but for counsel's alleged errors, "the result of the proceeding would have been different." Id. at 694.
 
 
 17
 Finally, a careful review of the record convinces us that there is sufficient evidence to sustain Insley's conviction. The government produced evidence of taped phone calls, a notation of Insley's parents' telephone number found at the apartment where the heroin was seized, phone notations found in Insley's apartment, and phone records, all of which implicated her in the conspiracy. Insley took the stand and offered testimony that she did free-lance work and errands for Hall, knew nothing of the drug activities and used an alias because she lived alone. Apparently the jury believed the government's evidence. Absent any deficiency in the sufficiency of the evidence, this court is bound by the "credibility choices of the jury." Saunders, 886 F.2d at 60 (citing United States v. Arrington, 719 F.2d 701, 704 (4th Cir.1983)). We find that the evidence taken as a whole "reasonably support[s] a conclusion that [Insley] wilfully participated in the unlawful plan with the intent to further some object or purpose of the conspiracy." United States v. Chindawongse, 771 F.2d 840, 845 (4th Cir.1985) (quoting United States v. Miranda-Uriarte, 649 F.2d 1345, 1349-50 (9th Cir.1981)).
 
 V.
 
 18
 The judgment of the district court with respect to all defendants is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Hall and Bunnark's activities in Atlantic City and later in Greenville also included Thatree Thanaranjakool, another defendant named in the indictment. Thanaranjakool violated his bond and failed to appear at trial. He was tried in absentia
 
 
 [2]
 The parties have not raised on appeal the issue of whether a decision not to depart from the applicable guidelines range is appealable. By our affirmance here of the judgment of the district court on the merits, we in no way intimate that a district court's failure to depart can serve as a basis for appeal