46 F.3d 1129
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Spencer Douglas SNIPES, a/k/a Mo Money, Defendant-Appellant.
 No. 94-5139.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 13, 1994.
Decided Dec. 28, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CR-93-124)
 Robert E. Frank, Norfolk, VA, for Appellant. Helen F. Fahey, United States Attorney, William D. Muhr, Special Assistant United States Attorney, Norfolk, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before HALL and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Spencer Douglas Snipes was indicted on charges of possession of cocaine base with the intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) (1988) (Count One), using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.A. Sec. 924(c)(1) (West Supp.1994) (Count Two), and knowing possession of a firearm transported in interstate commerce by a convicted felon in violation of 18 U.S.C.A. Sec. 922(g)(1) (West Supp.1994) (Count Three). Following a jury trial, Snipes was found guilty of a lesser included offense as to Count One, to wit, simple possession of crack cocaine in violation of 21 U.S.C.A. Sec. 844(a) (West Supp.1994); and Count Three. (J.A. 244). Snipes was acquitted of Count Two.
 
 
 2
 On appeal, Snipes raises four claims. First, he asserts that the district court erred in denying his motion to suppress certain inculpatory statements he made to police, on the ground that they were not made pursuant to a valid waiver of his rights. Snipes also asserts that the evidence was insufficient to support his conviction. Third, Snipes claims that the trial court erred in informing the jury that his alleged statements had been held admissible in an earlier proceeding. Finally, he asserts that the trial court erred in sentencing him under the provisions of United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1 (Nov.1993) (possession of drugs with intent to distribute), when the jury found him guilty only of the lesser included offense of simple possession of cocaine. For the reasons stated below, we affirm.
 
 I.
 
 3
 The charges arose from a search, pursuant to a properly executed search warrant, on March 20, 1994, of Snipes's parents' apartment in Portsmouth, Virginia. Detective G. E. Conners testified that he obtained the warrant based on a tip from a confidential informant, who claimed to be taking someone to the apartment to buy cocaine. Detective Conners and several other officers, including Detective R. G. Shelton, entered the apartment. Detective Conners found Snipes in the upstairs bathroom, patted him down for weapons, and asked him which bedroom belonged to him. Snipes pointed to the bedroom next to the bathroom. Detective Conners took Snipes downstairs, and began a general conversation with Snipes while the other officers searched the premises.
 
 
 4
 In Snipes's bedroom, Detective Shelton found on a chair next to the bed a hollowed-out potpourri can with a plastic bag inside which contained a large amount of an off-white "rocklike" substance.[1] On the same chair, Shelton also found small, ziplock plastic bags containing crack cocaine, empty ziplock bags, a pager, and personal papers and letters addressed to Snipes at that address. Detective Jerry Barnes recovered crack cocaine on the floor between the bed and the chair. In addition, Barnes found a cloth bag at the foot of the bed containing three handguns, and nine videotapes, one labelled "Nothing but Comedy by Mo Money," and another labelled "D. Snipes."
 
 
 5
 Detective Conners was informed about the discovery of the evidence, at which time he read Snipes his Miranda[2] rights. According to Conners, Snipes stated that he understood his rights. While Conners was reading Snipes his Miranda rights, Shelton was descending the stairs, and heard Conners advise Snipes of his rights. Shelton heard Snipes respond to the reading of his rights, but did not hear the substance of Snipes's response. Conners then went upstairs to view the evidence, and Detective Shelton questioned Snipes. It is undisputed that Detective Shelton did not personally advise Snipes of his rights. At this time, Snipes told Shelton, among other things, that he had been selling cocaine for six months to help his parents pay the rent, and that a friend had given him the can wherein the bulk of the cocaine was found. In addition, Detective Barnes showed Snipes one of the firearms he found in the cloth bag in Snipes's bedroom, and asked him where he got it. Snipes told the Detective that he had bought it at a yard sale.
 
 
 6
 Detective Thomas Snipes (no relation) testified at trial that the quantity of cocaine possessed by Snipes, along with the presence of the bags, the beeper, and the handguns were consistent with cocaine distribution, rather than mere possession. Herbert Tatem, an agent with the Bureau of Alcohol, Tobacco and Firearms, testified that all three weapons had crossed state lines.
 
 
 7
 Snipes's father testified that the weapons had been in the garage at their former residence, and because Snipes had not assisted in the move, he had no way of knowing where the weapons were. On cross-examination, Snipes's father admitted that Snipes could have put the guns in his room.
 
 
 8
 At trial, Snipes stipulated to a prior felony conviction. He denied answering any questions by the officers on the day of his arrest after he was read his rights. The district judge advised the jury that Snipes had previously raised before the court the issue of the voluntariness of his statements to the police, and that the Court had determined that the statements were made after his rights were read to him, and therefore Snipes's motion to suppress had been denied. Snipes objected to the judge's statement.
 
 
 9
 Snipes further testified that he had found the cocaine in a box he was unpacking several days before the warrant was executed. He denied knowing of the existence of the guns, and denied ever seeing the bag containing the firearms at the foot of his bed. Snipes claimed that the drugs belonged to his brother, who had been involved with drugs before he was murdered. While he admitted that the tapes were his, Snipes denied that the tapes were in the bag. Snipes admitted that people referred to him as "Mo Money," but claimed that the videotape with "Mo Money" on it was a movie.
 
 
 10
 Snipes was sentenced to 168 months imprisonment as to Count One, and 120 months imprisonment as to Count Three, to run concurrently with Count One. He was also sentenced to a term of three years supervised release on each of the two counts, to run concurrently, and ordered to pay the mandatory special assessment of $100.
 
 II.
 
 11
 This Court reviews the district court's legal conclusions de novo, but reviews the factual determinations made by the district court on suppression issues under a clearly erroneous standard. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.1992), cert. denied, 113 S.Ct. 1351 (1992). Here, the incriminating statements made by Snipes were admitted into evidence upon the district court's specific factual determination that the statements were made after Snipes had been apprised of his Miranda rights.
 
 
 12
 Specifically, Detective Conners testified that he "told [Snipes] he had a right to remain silent. Anything he said could and would be used against him in a court of law. He had a right to an attorney. If he could not afford an attorney, an attorney will be appointed for him before and during all questioning."[3] Conners then asked Snipes if he understood his rights, and Snipes answered in the affirmative.
 
 
 13
 We cannot say on this record that the district court's determinations that Snipes was afforded his rights pursuant to Miranda v. Arizona, 384 U.S. at 467-73, and that he waived those rights by making statements to the police after his rights were given, were clearly erroneous.
 
 III.
 
 14
 Snipes next alleges that the evidence was insufficient to support his conviction on either the possession or the firearm charge in light of his testimony and the testimony of Snipes's father, because the testimony of Detective Barnes was "suspect," and because Detective Conners should not have left Snipes to be questioned by another officer.
 
 
 15
 A jury verdict must be sustained if there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). The relevant question is whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found Snipes guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982).
 
 
 16
 Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to those sought to be established. Id. In resolving issues of substantial evidence, this Court does not weigh evidence or review witness credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). Circumstantial evidence need not exclude every reasonable hypothesis of innocence. United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir.1989).
 
 
 17
 We find that there was substantial evidence introduced at trial to support the jury's verdict on the possession of crack cocaine charge. Crack cocaine was found on the same chair in Snipes's bedroom as personal papers and letters addressed to Snipes at that address. Snipes admitted to Detective Shelton that he had been selling cocaine for six months to help his parents pay rent, and that a friend had given him the can in which the majority of the cocaine was found. Finally, Snipes stipulated that the substances found in his bedroom by the police were tested, and the laboratory report determined them to be cocaine base. The testimony of the officers, together with that of the other Government witnesses and taken in the light most favorable to the Government, supports Snipes's conviction on the possession of crack cocaine charge.
 
 
 18
 While Snipes's version of the story is different than that of the officers, such credibility determinations are the province of the jury, and will not be disturbed on appeal. See United States v. Saunders, 886 F.2d at 60; Pigford v. United States, 518 F.2d 831, 836 (4th Cir.1975).
 
 
 19
 We likewise uphold the jury's verdict on the charge of possession of a firearm. "[C]onstructive possession of firearms in relation to a drug transaction is sufficient to establish 'use' " under Sec. 924(c)(1). United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991). It is not necessary that a firearm be in immediate proximity or within arm's reach to constitute constructive possession. Id. "Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item," United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.1980), cert. denied, 447 U.S. 925 (1980), and has knowledge of the item's presence. United States v. Bell, 954 F.2d 232, 235 (4th Cir.1992), cert. denied, 114 S.Ct. 112 (1993).
 
 
 20
 Both elements may be established by circumstantial evidence. Bell, 954 F.2d at 235; United States v. Zandi, 769 F.2d 229, 234-35 (4th Cir.1985).
 
 
 21
 This Court has held that to establish constructive possession of a firearm in relation to a drug transaction, "it is enough [for purposes of Sec. 924(c)(1) ] if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used." United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988); see also United States v. Peay, 972 F.2d 71, 75 (4th Cir.1992), cert. denied, 113 S.Ct. 1027 (1993). Moreover, "it is not unreasonable to recognize that weapons have become 'tools of the trade' in illegal narcotics operations." United States v. White, 875 F.2d 427, 433 (4th Cir.1989) (quoting United States v. Hinds, 856 F.2d 438, 443 (1st Cir.1988)); see also Brockington, 849 F.2d at 876 ("common sense recognition that drug dealing is a dangerous and often violent enterprise").
 
 
 22
 Here the firearms were found in Snipes's bedroom. See United States v. Peay, 972 F.2d at 75 (evidence sufficient where agents, executing search warrants, found weapons in house and office where defendant had conducted drug transactions); United States v. Paz, 927 F.2d at 179 (firearm found under mattress of a bed in defendant's room). While Snipes did not own the apartment, there is no evidence that he shared occupancy of the bedroom. In addition, the firearms were found in a cloth bag in which videotapes Snipes admitted were his also were found. See United States v. Jones, 945 F.2d 747, 749-50 (4th Cir.1991). Further, Snipes admitted to Detective Barnes that he had purchased one of the firearms at a yard sale. Snipes stipulated that he was a convicted felon, and expert testimony was introduced that all three of the firearms had been manufactured outside of Virginia. We find that the Government presented substantial facts, construed in the light most favorable to the Government, sufficient to support the jury's verdict that Snipes was guilty of possession of a firearm.
 
 IV.
 
 23
 Snipes's next contention on appeal is that the district court erred in informing the jury that Snipes's alleged statements had been held admissible in an earlier motion to suppress. He claims that the judge's statement on that issue added weight to the statements in the eyes of the jury.
 
 
 24
 Here, the district court told the jury that statements made by Snipes after being given the proper Miranda warnings were admissible; the jury had to decide whether the incriminating statements allegedly made by Snipes were in fact made, given Snipes's denial. Also, the district court clarified for the jury that it was their decision whether to believe that Snipes made the statements. In addition, given the overwhelming evidence of guilt, aside from the admissions Snipes made to the police, Snipes cannot prove that the outcome of the trial would have been any different absent the disputed statements. Finally, as discussed above, the statements were admissible, and the district court did not err in denying Snipes's motion to suppress. Accordingly, we find that Snipes should not be granted a new trial on this issue.
 
 V.
 
 25
 Snipes's final claim on appeal is that the district court erred in sentencing him under the provisions of U.S.S.G. Sec. 2D1.1 when the jury found him guilty only of the lesser included offense of mere possession of cocaine.
 
 
 26
 The probation officer calculated Snipes's offense level as thirty-six, based on a base offense level of thirty-two for involvement with at least fifty grams, but less than 150 grams of cocaine base pursuant to U.S.S.G. Sec. 2D1.1(c)(6),[4] with two points added for firearm possession pursuant to U.S.S.G. Sec. 2D1.1(b)(1), and an additional two points added for obstruction due to Snipes's false testimony at trial. The district court departed downward from the total offense level to thirty-four based on Snipes's argument.
 
 
 27
 Snipes asserts that because the jury did not convict him of possession with intent to distribute, he should not have been sentenced in accordance with Sec. 2D1.1. However, Snipes's contention on this issue fails to recognize that the provisions of U.S.S.G. Sec. 2D1.1 apply to simple possession by way of a cross-reference in U.S.S.G.
 
 
 28
 Sec. 2D2.1(b)(1). We find that Snipes's sentence was imposed pursuant to a proper application of the sentencing guidelines.
 
 
 29
 Accordingly, we affirm Snipes's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 At trial, Snipes stipulated that the substance found in his bedroom was tested and determined to be crack cocaine
 
 
 [2]
 See Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [3]
 Snipes's assertion in his brief that Conners could not remember what he said to Snipes in giving him the required warnings is not supported by the record
 
 
 [4]
 According to the lab analysis, the total weight of the cocaine base recovered from Snipes's room was 58.57 grams