48 F.3d 1218
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lazaro TAPIA-SANTANA, a/k/a Lazaro Martinez Tapia, a/k/a
Lazaro L. Martinez, a/k/a Larry Tapia, a/k/a
Lazaro Tapia Martinez, Defendant-Appellant.
 No. 94-5327.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 9, 1994.
Decided: March 3, 1995.
 
 ARGUED: Dean Robert Davis, Wilmington, NC, for Appellant. John Samuel Bowler, Assistant United States Attorney, Raleigh, NC, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Jane H. Jolly, Assistant United States Attorney, Raleigh, NC, for Appellee.
 Before NIEMEYER and MICHAEL, Circuit Judges, and MESSITTE, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Lazaro Tapia-Santana was charged in a three-count indictment with conspiracy to distribute and possess with intent to distribute cocaine, see 21 U.S.C. Sec. 841(a)(1), possession with intent to distribute cocaine, see 21 U.S.C. Sec. 846, and possession of counterfeit money, see 18 U.S.C. Sec. 472. At the close of the government's case the district court granted Santana's motion for judgment of acquittal on the possession of counterfeit money count. The jury found Santana guilty on the cocaine counts. Santana appeals both his conviction and his 235-month prison sentence. We affirm.
 
 I.
 
 2
 Earl Lee Thornton, a convicted drug dealer attempting to avoid a life sentence, arranged the event that led to Santana's arrest and conviction. Thornton, while in custody and under police supervision, called Santana in Miami seven times. Using coded language Thornton ordered, and Santana agreed to deliver, five kilograms of cocaine at 8:00 p.m. on October 8, 1993, at Quincy's Steakhouse in Fayetteville, North Carolina. The police recorded each call, and the jury heard the tapes.
 
 
 3
 When Santana arrived at the appointed time and place, the police arrested him. In their search of Santana's 1989 Ford Thunderbird, the police found nearly five kilograms of pure cocaine hidden in a stereo speaker. Santana also had a pager and cellular telephone.
 
 
 4
 At trial Santana testified that he met Thornton on the beach in Miami in 1989 and that Thornton later hired Santana to make the single (October 8, 1993) delivery of cocaine to North Carolina. According to Santana, this was his first drug transaction, and his courier's fee was to be $22,000.
 
 
 5
 Thornton, who distributed drugs in North Carolina, testified that Santana regularly supplied him with cocaine from 1987 to 1993. Specifically, Thornton said that Santana delivered an average of three to five kilograms each month. To order cocaine Thornton paged Santana, encoded a return number, and then discussed the amount and delivery terms when Santana called back. For most deliveries Thornton met Santana at "South of the Border" on I-95, near the North and South Carolina line. From there Santana followed Thornton to the Cross Creek Mall in Fayetteville. At the mall Thornton parked his car, got into Santana's car, and drove Santana to a safe house to exchange money for drugs.
 
 
 6
 Thornton testified that on one occasion he used counterfeit money to pay Santana for ten kilograms of cocaine. When Santana returned to Miami, he discovered Thornton's deceit and forced Thornton to return the drugs and take back the counterfeit money. Thornton testified that he never counted the counterfeit bills returned by Santana. Instead, he tried to burn them and then buried the charred fragments. Secret Service Agent Joseph Michael Casper corroborated Thornton's testimony about the counterfeit money. After Thornton was arrested, he led Casper to the site of the buried counterfeit fragments. Casper dug up the fragments and determined that counterfeit bills with the same characteristics surfaced in both Fayetteville and Miami.
 
 
 7
 Santana was convicted after a three-day trial, and he now appeals.
 
 II.
 
 8
 Santana's first assignment of error is that the evidence about counterfeit money found in Miami was inadmissible. First, Santana argues that Agent Casper's testimony was irrelevant because the Miami bills were not sufficiently connected with the charred bills Thornton buried in North Carolina. See Fed.R.Evid. 401. Second, Santana says that a Secret Service report of counterfeit bills seized (compiled weekly by denomination, serial number and place of seizure) was admitted without a proper foundation under the business record exception to the hearsay rule.* See Fed.R.Evid. 803(6).
 
 
 9
 We need not decide whether this evidence was admissible. Santana's own testimony rendered it inconsequential to the determination of his guilt on the two drug counts submitted to the jury. In other words, even if we could find error, it would be harmless. Santana took the stand and admitted the essential elements of each crime for which he was convicted. He testified that he agreed with Thornton to deliver five kilograms of cocaine to Thornton for $22,000. The cocaine was found in Santana's car when he was arrested, and Santana admitted that he was bringing it to Thornton.
 
 
 10
 Santana's second and third assignments of error involve his sentencing. Santana says that the district court should have reduced his sentence for acceptance of responsibility since he admitted delivering the cocaine found in his Thunderbird. See U.S.S.G. Sec. 3E1.1, Application Note 1. Based on Thornton's testimony, the district court decided that Santana did not accept responsibility for his prior drug transactions. Santana also says that there was no credible evidence to support the district court's factual finding that Santana had delivered up to 150 kilograms of cocaine to North Carolina. This relevant conduct finding was likewise based on Thornton's testimony. See U.S.S.G. Sec. 1B1.3. Both of Santana's arguments rest on his charge that Thornton was an unreliable witness. Specifically, Santana says that Thornton's desire to avoid a life sentence makes his testimony unworthy of belief.
 
 
 11
 Thornton testified in detail about his long-term cocaine trafficking relationship with Santana. Thornton testified that from early 1987 until 1993 he received three to five kilograms of cocaine per month from Santana. Thornton's testimony was corroborated by the taped telephone calls. They revealed an intimate working relationship between Thornton and Santana. The district court found Thornton's
 
 
 12
 testimony credible, and credibility determinations are not reviewable on appeal. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989).
 
 
 13
 The district court did not clearly err in deciding that Santana failed to accept responsibility for all of his illegal conduct and in finding that Santana delivered at least 150 kilograms of cocaine to Thornton.
 
 
 14
 We affirm Santana's conviction and sentence.
 
 AFFIRMED
 
 
 *
 The Secret Service report provided the basis for Agent Casper's testimony that the serial numbers on the North Carolina and Miami bills indicated they were from the same batch