UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4139

JAMES M. WILLIAMS, JR., a/k/a
Monty,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CR-96-39)

Submitted: August 12, 1997

Decided: August 28, 1997

Before HAMILTON and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Claude M. Scialdone, Barry R. Taylor, G. Paul Martin, Third Year
Law Student, SCIALDONE & ASSOCIATES, Virginia Beach, Vir-
ginia, for Appellant. Robert P. Crouch, Jr., United States Attorney,
Anthony P. Giorno, Assistant United States Attorney, Roanoke, Vir-
ginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

A jury convicted James M. Williams, Jr., of conspiring with Steve Dillon and others from July 1995 until April 1996 to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846 (1994), and of, on April 25, 1996, attempting to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1994). The court sentenced him to 240 months of incarceration. He appeals and argues that insufficient evidence supports his convictions and that the trial court erred in excluding evidence and instructing the jury. We affirm.

The jury convicted Williams primarily on the testimony of others engaged in the buying and selling of drugs. Tommy Byers was one cooperating witness who tried unsuccessfully to sell two kilograms of cocaine to Williams on February 27, 1996. The government played audio tapes of Williams and Byers planning the deal. Before the deal was consummated, Byers met with Williams and Williams introduced to Byers his associate, Steve Dillon. Williams had told Byers that Dillon would actually pick up the cocaine. Byers and law enforcement agents waited for the deal to occur at a Days Inn motel but neither Dillon nor Williams appeared. Williams later told Byers that they did not show up for the deal because they thought they were being followed. Drug agents were following Williams and Dillon. An agent testified that he was following the vehicle in which Williams was a passenger the night of the planned deal and that as it was headed toward the Days Inn, Williams looked toward the officers. The vehicle then reversed course and the agents terminated their surveillance.

Robert Morgan also testified against Williams. He was arrested on drug charges also and decided to cooperate with authorities. Morgan had been incarcerated with Dillon from 1988 until 1991. Dillon had asked Morgan to help him find a cocaine supplier in July or August 1995, but Morgan did not assist him. About three or four months later

2

Dillon and Williams traveled to a furniture store in North Carolina out of which Morgan was working. Dillon pulled Morgan aside, away from Williams, and again asked Morgan to help him establish a cocaine connection. This time Dillon said that the connection would be for Williams and that he was willing to pay $10,000 for the connection. Again, Morgan declined the offer.

Authorities arrested Morgan in February 1996 on other charges and Morgan began having recorded telephone conversations with Dillon. Several of these conversations were played for the jury. Dillon and Morgan arranged a two-kilo cocaine deal for April 25, 1996, at Tanglewood Mall in Roanoke, Virginia, during which Morgan would introduce the connection, actually an undercover agent, to Dillon. Dillon arrived at the mall alone in Williams' pickup truck and was arrested after he showed that he had the money to buy the two kilos of cocaine.

Dillon, a convicted felon, testified for the government pursuant to a plea agreement. Williams began supplying Dillon with cocaine on a consignment basis in October of 1995. On one occasion Williams and Dillon weighed out a kilo of cocaine, cut it, and packaged it for sell. The two kept the cocaine in Dillon's apartment. Dillon testified about meeting Tommy Byers and said that Williams described him as his potential cocaine source. Dillon also testified that he and Williams were en route to make the two-kilo cocaine deal with Byers when Williams changed his mind and they returned to Williams' house. Dillon testified that he was going to get the cocaine from Morgan for both himself and Williams. Williams supplied the money for the purchase of cocaine from Morgan. Williams brought the $30,000 to Dillon in the pickup truck that Dillon drove to Tanglewood Mall. Agents arrested Dillon at the mall and arrested Williams at Dillon's home. Police recovered cocaine in plastic bags in Dillon's home and recovered the cash carried to the mall, also packaged in a plastic bag, from the pickup truck.

Williams presented a witness who testified that she saw Dillon buy cocaine in his apartment. Another witness testified that Dillon had asked her if he could borrow her vehicle on April 25, the day of the Tanglewood Mall deal. She declined and testified that Williams had told her that he let Dillon use his truck.

3

Williams first contends that the trial court erred when it excluded the testimony of his fingerprint expert. The expert would have testified that if fingerprints were present on the plastic bags containing the cocaine recovered at Dillon's residence and the cash brought to Tanglewood Mall, the prints could have been recovered. The expert did not actually test the bags to confirm that fingerprints were present. The district court found that this testimony was an attempt to put the government's investigation on trial and excluded it under Fed. R. Evid. 403 as a waste of time. We find no abuse of discretion here. The government did not present a fingerprint expert and it was not notified of the defense's intent to call its expert until the day he was to testify. See United States v. Dorsey, 45 F.3d 809, 816 (4th Cir. 1995) (failing to advise government of expert witnesses until first day of trial formidable reason in itself to exclude testimony). Moreover, the defense was able to argue to the jury that the government's failure to test the bags possibly deprived Williams of exculpatory evidence because his fingerprints might not have been found.

Williams next argues that the trial court's jury instructions deprived him of a fair trial. After the court's first instruction, the jury retired to the deliberation room but were recalled to be instructed that "knowingly" was an element of the conspiracy count and of the effect on credibility of a prior felony conviction. This recall occurred before the jury had started deliberating. When the jury returned to the jury room the defense again objected because the court had inadvertently stated during the reinstruction that the defendant had the burden of proof on the elements of the offense. The jury was promptly recalled to the courtroom and instructed that the defendant had no burden. Williams does not contend that the instructions in their final form were wrong, but instead contends that these three attempts to instruct left the jurors confused. We find that the jury was properly instructed in unambiguous terms and that Williams' speculation that the jury may have been confused by the corrections made, merits no relief. See Opper v. United States, 348 U.S. 84, 95 (1954).

Finally, Williams contends that the government failed to present sufficient evidence to support his convictions. He argues that he was convicted solely on Dillon's testimony which was not believable. The credibility of a witness is a matter for the jury to decide. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Moreover, the

4

uncorroborated testimony of one accomplice is sufficient to support a guilty verdict. See United States v. Figurski , 545 F.2d 389, 392 (4th Cir. 1976). And, as the summary of the government's evidence above shows, there was evidence against Williams other than Dillon's testimony. We find the evidence to be sufficient for conviction on both counts.

Accordingly, we affirm Williams' convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5