UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 98-4274

TERESA MAYS, a/k/a Toreatha A.
Beaty,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Dennis W. Shedd, District Judge.
(CR-97-105)

Submitted: November 30, 1998

Decided: December 21, 1998

Before MURNAGHAN and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Russell Doyle Ghent, LEATHERWOOD, WALKER, TODD &
MANN, P.C., Greenville, South Carolina, for Appellant. J. Rene
Josey, United States Attorney, Scarlett A. Wilson, Assistant United
States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Teresa Mays pled guilty to conspiracy to possess marijuana, cocaine, and cocaine base (crack) with intent to distribute, see 21 U.S.C. § 846 (1994), and to being a felon in possession of a firearm, see 18 U.S.C.A. § 922(g) (West Supp. 1994). She appeals the 210-month sentence she received, contending that the district court clearly erred in finding that she possessed a firearm during a drug offense, erred in finding that she had no right of self-defense against unknown intruders, and erred in considering the results of her polygraph test without stating to what extent it was a factor in the court's determination of her credibility. Mays also disputes the district court's decision to apply U.S. Sentencing Guidelines Manual§ 2A2.1(a)(1) (1997) (Assault with Intent to Commit Murder or Attempted Murder) pursuant to the cross reference in USSG § 2K2.1(c)(1)(A), and to increase her sentence for obstruction of justice based on perjury. See USSG § 3C1.1. We affirm.

After a confidential informant made a controlled purchase of marijuana from Mays, Detective John Sutherland and other officers from the Fairfield County, South Carolina, Sheriff's Department executed a search warrant at Mays' residence before dawn on July 28, 1995. As Sutherland entered the house, Mays fired a shot which hit the door frame above the officer's head. Sutherland returned fire but did not hit Mays. Sutherland then turned on the light and saw Mays drop to the floor and throw down a pistol. In the bedroom from which Mays fired at Sutherland, the officers found a loaded revolver, $1685 in cash (part of which was the marked money used by the informant), .95 grams of crack, 44.3 grams of marijuana, twenty-seven unidentified white tablets, eleven and a half Xanax tablets, and various items of drug paraphernalia, including a set of hanging letter scales and a hemostat. Both Mays and her roommate, Kay Phillis, were arrested. After their release on bond, Mays and Phillis continued to sell crack,

2

cocaine, and marijuana to the informant. They also sold him a fire-arm. Mays was eventually indicted on federal drug and firearm charges and entered a guilty plea to one count of conspiracy and to possessing a firearm after being convicted of a felony.

The probation officer placed both counts in one group to calculate the offense level. See USSG § 3D1.2. In computing the offense level for the drug conspiracy count, the probation officer recommended a two-level enhancement for possession of a firearm during a drug offense. See USSG § 2D1.1(b)(1). However, the final offense level was determined by the felon-in-possession offense. The probation officer recommended application of the cross reference in USSG § 2K2.1(c)(1)(A), which provides that, if the defendant used the fire-arm in connection with the commission or attempted commission of another offense, USSG § 2X1.1 should be applied, which in turn pro-vides for application of the guideline for the underlying conduct. The probation officer recommended that, in Mays' case, the underlying conduct was assault with intent to commit murder or attempted mur-der, which yielded a base offense level of 28. See USSG § 2A2.1(a)(1). Three levels were added because the victim was a law enforcement officer, see USSG § 3A1.2(b), raising the recommended offense level to 31.

Mays objected to the application of the cross reference, alleging that she did not hear the police announce themselves, that she fired in self defense, and that she had purposely aimed high to avoid injur-ing the supposed intruders. Of her own volition, Mays took a poly-graph test before she was sentenced. She was asked the following questions: "On the day of the shooting incident did you know the peo-ple that were shot at were police officers?" and "On the day of the shooting incident did you hear the police identify themselves?" Mays' answers indicated deception. At a pre-sentencing hearing, the district court warned the government that it could not depend on the poly-graph test results to prove at sentencing that Mays had knowingly fired at police officers because the questions were too imprecise. The government indicated that it would rely instead on the testimony of the officers who executed the search warrant.

At the sentencing hearing, Sutherland and two of the other officers who were present during the search testified that Sutherland knocked

3

on the door of Mays' small house and called loudly,"Sheriff's Department, search warrant," three times before he forced open the door and entered the house. Sutherland testified that the house was dark but that the television was on in the bedroom to his left. In the faint light, he saw someone stand up near the end of the bed, heard a shot, and saw a bright flash. He fired at the flash. The government also presented a video of the interior of the house which showed where Sutherland's and Mays' bullets had lodged. In response to a question from the court, Sutherland testified that a right-handed person's first, hurried shot is usually high and to the right of the intended target. The other two officers testified that Sutherland announced their presence three times before entering. Investigator Adam Roberson further stated that Mays' bedroom window was close to the front door.

Mays testified that she never heard the officers identify themselves. She said that Phillis, who was sleeping in the same bed, woke her and told her someone was breaking in. Mays said she asked Phillis where the gun was and was told it was under the pillow. Mays said she could not find it, so Phillis located it and handed it to her. She said she then got on her knees near the head of the bed and, when she saw someone enter through the front door, she fired a warning shot above the bedroom doorway.* Under cross-examination, Mays added that she yelled, "Who is it?" twice before the officers entered, but that she did not receive an answer. Recalled by the court, Sutherland and the other officers all testified that they did not hear anyone call to them before they entered.

The district court found that Mays' account was not credible because it conflicted with the officers' testimony and with the physical evidence, which showed that Sutherland's bullet hit the wall between the window and the wardrobe, just where he said he saw the flash from Mays' gun, and not where she said she was when she fired. The court found that, if Mays was awake before the officers entered long enough to have the discussion with Phillis that she described, she would have heard them knocking and calling out. The court further found that Mays had fired with premeditation, intending to hit the per-

_____

*Defense counsel called Phillis as a witness to corroborate Mays' account, but Phillis asserted her Fifth Amendment right not to testify.

4

son coming through the bedroom door. Consequently, the court found that the cross reference to the guideline for attempted murder was correct. Finally, the court determined that Mays had obstructed justice by giving perjured testimony during the sentencing hearing and that she had not accepted responsibility for her criminal conduct. This raised the offense level to 33. With a criminal history category of III, Mays' guideline range was increased to 168-210 months. The court imposed a sentence of 210 months.

On appeal, Mays first contests the enhancement for possession of a firearm during a drug offense, see USSG§ 2D1.1(b)(1), arguing that the government failed to prove that she possessed the weapon before the officers' entry. Because Mays did not object to this enhancement in the district court, we review the issue for plain error. See United States v. Olano, 507 U.S. 725, 732 (1993). Undisputed information in the presentence report described how Mays sold marijuana to the informant the night before the search. Additional drugs were present in her bedroom when the officers searched it the next morning. For the enhancement to apply, the firearm need only be present in a place where a drug conspiracy is carried on. See United States v. Apple, 962 F.2d 335, 338 (4th Cir. 1992). We find no plain error in the district court's adoption of the recommended enhancement which, in any case, did not affect the final offense level.

Next, Mays contends that the district court erred in concluding that she had no right to defend herself against persons whom she believed to be intruders but who were in fact law enforcement officers. Her argument fails because the district court did not so find. Rather, the court first found that Mays' testimony was not credible and then made a factual finding that she knew she was shooting at officers from the Sheriff's Department. While we do not review a district court's credibility determination, see United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989), we review the district court's factual findings for clear error. See United States v. Perrin, 45 F.3d 869, 871 (4th Cir. 1995). All three officers testified that Detective Sutherland loudly knocked and announced their presence several times before they entered Mays' house, and that one of the officers testified that they were standing close to her bedroom window at the time. Moreover, none of the officers heard Mays respond as she said she did. We can-

5

not find that the district court clearly erred in concluding that Mays knew she was shooting at law enforcement officers.

Next, Mays contends that the district court erred in considering the results of the polygraph test at sentencing without making a finding as to the reliability of the test results or explaining to what degree the polygraph test results affected its decision as to her credibility. Our review of the record discloses that the court did not consider the polygraph test in determining Mays' sentence. After the court found that Mays' self-defense claim was not credible, that application of the cross reference to USSG § 2A2.1 was appropriate, and that Mays had not accepted responsibility, the district court made the following statement:

> I would note that the polygraph, while we question whether or not those questions--the polygraph results don't lend any credence to her version of the story, none whatsoever, the amount of proof they are to add to the government's case is, you know, open to dispute, I guess. I think it does help the government's case some. I would note without any doubt it doesn't credit her version of the facts.

These comments were an aside which had no bearing on the court's finding concerning Mays' claim of self-defense. The court had already made its finding. Moreover, the government did not introduce the polygraph test results at sentencing or make any argument based on the test because the district court had already determined, before the sentencing hearing, that the questions asked were too imprecise to be useful. We find no error in the court's gratuitous comments about the test.

Finally, Mays argues that, because the district court erred in finding that she did not shoot in self-defense, it also erred in applying the cross reference to USSG § 2A2.1(a)(1) and in finding that she obstructed justice by perjuring herself at sentencing. For the reasons already discussed, we find no error in the court's use of the cross reference or finding of perjury.

We therefore affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the

6

materials before the court and argument would not aid the decisional process.

AFFIRMED

7