UNITED STATES of America, Plaintiff–Appellee,

v.

Tony Wade JOHNSON, Defendant–Appellant.

No. 94–5652.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1995.

Decided June 13, 1995.

**ARGUED:** Jonathan Silverman, Staton, Perkinson, Doster, Post, Silverman & Adcock, Sanford, NC, for appellant. Scott Patrick Mebane, Asst. U.S. Atty., Greensboro, NC, for appellee. **ON BRIEF:** Walter C. Holton, Jr., U.S. Atty., Greensboro, NC, for appellee.

Before ERVIN, Chief Judge, and RUSSELL and WILKINS, Circuit Judges.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge RUSSELL and Judge WILKINS joined.

## OPINION

ERVIN, Chief Judge:

Tony Wade Johnson appeals from his conviction for violating 18 U.S.C. § 922(g)(1), which prohibits the possession of a firearm by a convicted felon. He contends that the government transgressed the Double Jeopardy Clause of the United States Constitution, U.S. CONST. amend. V, by prosecuting him a second time for the same offense after a mistrial was declared in his first trial. Johnson also challenges the sufficiency of the government's evidence against him. Finding no error, we affirm Johnson's conviction.

### I.

At approximately 3:30 p.m. on April 25, 1993, appellant Tony Wade Johnson was observed driving a car by municipal police officers William Frederick and Reid King. At the time, the officers were sitting in an unmarked patrol car within the city limits of Sanford, North Carolina. Officer Frederick knew Johnson's identity and was aware that he did not have a valid North Carolina driver's license.

The officers attempted to pull Johnson over, following his vehicle at a distance of about one car length for approximately three-tenths of a mile. Travelling between 25 and 35 miles per hour, Johnson turned into the parking lot of "J & J Grocery" and drove around to the back of the store. The police officers continued to follow Johnson closely and observed him toss a dark object out of the driver's window with his left hand. Johnson then stopped his vehicle elsewhere in the parking lot. Officer King went to the area behind the building where he and Officer Frederick had seen Johnson drop the object and discovered a small, black .38 caliber revolver. A search of Johnson's car revealed nothing of significance.

On February 1, 1994, a grand jury sitting in the United States District Court for the Middle District of North Carolina indicted Johnson on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In 1990, Johnson had been convicted in North Carolina state court of being an accessory after the fact to murder. The federal case was tried on April 11–14, 1994. At the urging of defense counsel, the parties stipulated in writing that Johnson previously had been convicted of a crime punishable by more than one year, agreeing not to inform the jury further because of the prejudicial nature of that offense. During its instructions to the jury regarding Johnson's prior felony conviction, the court read from the indictment that Johnson had been convicted of being an accessory after the fact to murder. After the jury began deliberating, the court informed Johnson that it would grant a motion for a mistrial, but only if the request was made before the jury returned with a verdict. Johnson then asked for a mistrial, and the court granted his motion.

Prior to his second trial, and before a different district court judge, Johnson moved

to dismiss the indictment against him based on the constitutional prohibition against double jeopardy. The district court denied the motion, reasoning that Johnson had sought mistrial voluntarily. The court also determined that the judge in the prior proceeding had demonstrated "an abundance of fairness" in responding to the inadvertent reading from the bill of indictment information that had been excluded by stipulation of the parties.[1] The matter proceeded to trial on May 12. The jury found Johnson guilty of violating § 922(g)(1). The defendant moved for a judgment of acquittal. The court denied the motion and sentenced him to 264 months in prison. Johnson filed timely notice of appeal to this court.

## II.

■ Johnson first claims that the district court erred by denying his motion to dismiss the indictment against him, arguing that his retrial violated the Fifth Amendment's prohibition against double jeopardy. He contends that he did not waive a challenge to his reprosecution by moving for mistrial at the initial proceeding, because he was given the "Hobson's choice" of moving for mistrial before the jury returned with a verdict or accepting the court's prejudicial jury instruction.

As we stated in *United States v. Borromeo*, 954 F.2d 245 (4th Cir.1992), "[g]enerally, the government is not barred from retrying cases when the first trial ends on the defendant's motion for mistrial." *Id.* at 247. The Supreme Court clarified an exception to this general rule in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), holding that "only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676, 102 S.Ct. at 2089. *Kennedy* emphasized that intent to provoke a mistrial, rather than mere prosecutorial overreaching, is necessary to render meaningless

a defendant's motion for a mistrial. *See id.* at 677–79, 102 S.Ct. at 2090–91 (limiting language in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), and *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion), which suggested that prosecutorial overreaching was sufficient to invoke double jeopardy bar).

We have recognized that a "court's finding concerning the prosecutor's intent is, of course, a factual one which we must accept unless it is clearly erroneous." *Borromeo*, 954 F.2d at 247. *See also United States v. Council*, 973 F.2d 251, 254 (4th Cir.1992) ("Deference should be given to the trial court in determining whether such an intent existed."); *United States v. Green*, 636 F.2d 925, 927 (4th Cir.1980) ("The issue whether the prosecution deliberately provoked a mistrial becomes one for the district judge to resolve, and his determination will not be disturbed if supported by the record.").

Prior to Johnson's second trial, the district court found no evidence of bad faith on the part of the United States Attorney or the original trial judge in this case, and we find nothing in the record to contradict that determination. The prosecution had entered into a mutually agreeable stipulation to keep the nature of Johnson's prior conviction from the jury and played no role in bringing about the prejudicial jury instruction. The judge presiding over Johnson's first trial, who articulated the belief that his instruction would stand on appeal, nonetheless expressed concern about his mistake and offered the defendant the opportunity to request a mistrial. In sum, the record strongly supports the district court's finding prior to Johnson's second trial that there was no prosecutorial or judicial intent to provoke a mistrial. This case, therefore, falls outside the exception established in *Kennedy*.

In granting Johnson's motion for a mistrial, the court specifically asked the defendant: "You understand that the granting of a mistrial in no way prohibits or limits the retrial of this case at a later time, is that correct?"

---

1. Alleging insufficient evidence, Johnson also made a pre-trial motion for a judgment of acquit-

tal, which the district court likewise denied.

Johnson, duly represented by counsel, then responded "Yes." In the absence of governmental conduct designed to induce a mistrial, Johnson thereby waived the possibility of raising a meritorious double jeopardy claim.[2]

### III.

■ In reviewing a sufficiency of the evidence challenge to a conviction, we inquire whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our deference to the trier of fact requires that we "construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *United States v. Giunta*, 925 F.2d 758, 764 (4th Cir.1991).

Johnson challenges the sufficiency of the government's evidence against him on several grounds. First, he attacks the credibility of the prosecution's witnesses by citing what he contends are inconsistencies in their testimony. In particular, he points to alleged contradictions and omissions in the testimony of police officers Frederick and King. These include the positions of various vehicles at the scene and whether Johnson's car was searched before or after King went to the area where Johnson's revolver was discovered. The "discrepancies" cited by Johnson are relatively minor; no one seriously disagreed about any facts of significance, except for Johnson's claim that he did not toss the firearm from his car window. More importantly, assessing the credibility of witnesses is within the province of the jury—a task in which we decline to engage at this stage of proceedings, particularly when the alleged inconsistencies in their testimony concern relatively unimportant points. *See Giunta*,

925 F.2d at 764 (noting that appellate courts are to assume the credibility of the evidence).

Next, Johnson focuses his insufficient evidence claim on two particular elements of the § 922(g)(1) offense: (1) possession of a firearm (2) transported in interstate commerce. Regarding the possession issue, Johnson relies on *United States v. Blue*, 957 F.2d 106 (4th Cir.1992), in which we held there was insufficient evidence to establish the actual or constructive possession necessary for a § 922(g) violation. In *Blue*, a law enforcement officer who had stopped two men in a car saw the person in the passenger seat "dip" his shoulder as the officer approached the vehicle. *Id.* at 107–08. On that basis, the government charged the passenger with possession of the gun found under the seat he occupied. There was no evidence the defendant owned the gun discovered by the officer, owned the car in which the gun was found, or had been in the vehicle previously. *Id.* at 108. In contrast, the two officers involved in this case testified they observed Johnson, who was driving alone, place his arm outside of the driver's window and drop a dark object. At no point did the officers lose sight of Johnson. Immediately after stopping him minutes later, Officer King searched the area where he and Officer Frederick had seen Johnson discard the object and discovered a revolver. From this evidence, a rational trier of fact could conclude that Johnson had possessed the weapon Officer King found, thereby satisfying the possession element of § 922(g).

Regarding the statute's interstate commerce requirement, Special Agent Ernest Driver of the Bureau of Alcohol, Tobacco, and Firearms testified that the weapon in question was manufactured by the Rossi Company in Brazil and imported into the United States by the Garcia Corporation in Washington, D.C. By definition, a firearm that arrives from abroad in Washington,

---

**2.** Because Johnson waived any colorable claim of double jeopardy that might have prevented his retrial, arguments regarding the sufficiency of the evidence at his first trial are immaterial. *Cf. Richardson v. United States*, 468 U.S. 317, 325–26, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984) (holding that a hung jury is not an event which terminates jeopardy and noting that petitioner thus had no double jeopardy claim "[r]egardless

of the sufficiency of the evidence at [his] first trial"). Therefore, we decline to address Johnson's contention that the government undermined its case by stipulating during the first trial that his civil rights had been restored at the time the weapon was discovered by Officer King. At Johnson's second trial, the defendant stipulated that he was a convicted felon who could not lawfully possess a weapon.

D.C., and ends up in North Carolina must have travelled through interstate commerce.

## IV.

Because Johnson's second trial did not violate the proscription against placing him twice in jeopardy for the same offense, and because there was sufficient evidence to support the jury's verdict against him, Johnson's conviction is hereby

*AFFIRMED.*