**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 94-5851

STANLEY HICKMAN,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CR-93-144-BO)

Argued: April 4, 1996

Decided: May 6, 1996

Before NIEMEYER, HAMILTON, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Lawrence Zaffiro, Wauwatosa, Wisconsin, for
Appellant. William Arthur Webb, Assistant United States Attorney,
Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie
Cole, United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Following a jury trial, appellant, Stanley Hickman (Hickman), was convicted of numerous offenses arising from his participation in a drug conspiracy. On appeal, he challenges his convictions and his sentence. For the reasons that follow, we affirm.

I

This case involved a conspiracy to possess with the intent to distribute and to distribute cocaine base (crack) in Henderson, North Carolina from June 1990 until October 26, 1993. Generally, the drugs were acquired in New York and transported to Henderson via couriers, the post office, and United Parcel Service. The conspiracy used Western Union money transfers and couriers to transport the proceeds of the transactions to the suppliers in New York. The conspiracy was headed by Hickman's brother, Steve Hickman; Hickman's role in the conspiracy was essentially one of a street dealer.

In November 1993, Hickman and eleven others were charged with numerous violations of the federal drug laws. Hickman and eight others were charged with conspiracy to possess with the intent to distribute and to distribute crack, see 21 U.S.C.§§ 841(a)(1) and 846. Hickman was also charged with one count of aiding and abetting the use of a communications facility in aid of racketeering, see 18 U.S.C. §§ 1952 and 2, and one count of aiding and abetting the possession of crack with intent to distribute, see 21 U.S.C. §§ 841(a)(1) and 2.

Some of Hickman's codefendants pled guilty and agreed to cooperate with the government. Hickman went to trial along with three codefendants. During the trial, counsel for Hickman moved for a severance, and this motion was joined by Hickman's codefendants. The government opposed the motion for severance. The district court then stated:

> So you want a mistrial, is that it, an order of severance, is that right as to each defendant? . . .

2

But I want to make sure that you and your clients--and I'll have to ask you directly on the record--to state categorically without equivocation that you knowingly and intentionally waive any challenge to double jeopardy and that you concede as a matter of binding stipulation in this case that you're eligible for retrial. And you can think about that.

We'll take a break and I'll let you think about that. . . .

All right. Thank you. I believe I'm going to sever these cases and mistry them and then schedule them at a convenient time for all the parties in the future and try them seriatim. It won't create too much difficulty for your proof because you can marshal your proof for the particular defendants. I think the motions have been made and the parties insist on their confrontation rights, and I wouldn't want to compromise their rights in any regard. And they have been forthright about making those requests; and in order to make sure that everybody is satisfied with their respective position, I think I'll do that.

And it's clear that the bar of double jeopardy cannot apply because the defendants have precipitated the request for severance and in the inevitability of severance by the manner in which they have posed questions on cross-examination, and so double jeopardy is not present and would not be a bar. And I state that as a conclusion of law. If anybody has an objection to that conclusion, I'll hear you now respecting it. . . .

All right. [Counsel for Hickman], any objection to my ruling?

(J.A. 37-41). Counsel for Hickman stated he had"no objection" to the district court's ruling. (J.A. 41). Thereafter, the district court stated:

The jury was dismissed on ruling of allowance of the motions by each of the four defendants to sever. And as a result of the severance the defendants will be tried sepa-

3

rately. And this case is mistried accordingly. The Court rules that there is no bar from the calendaring and trial of each of the defendants' cases separately because of any jeopardy, the motion being initiated by each defendant and the mistrial being precipitated by the allowance of that motion without any charge against the government. So it was a defendant-induced mistrial and it could be retried as if it never had been tried before.

(J.A. 43).

Hickman was then tried separately. At trial, the government's evidence consisted of, among other things, drug seizures, the testimony of cooperating witnesses, and documentation of money transfers and drug shipments. After trial, the jury convicted Hickman on all three counts charged against him. The district court sentenced Hickman to life. Hickman noted a timely appeal.

II

On appeal, Hickman raises numerous assignments of error, only a few of which merit discussion. We shall address these assignments of error in turn.

A

Hickman contends his second trial violated his rights under the Double Jeopardy Clause of the Fifth Amendment. We disagree.

The Fifth Amendment provides, in pertinent part, that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The classic case of a Double Jeopardy Clause violation is where the defendant is retried following an acquittal. See Arizona v. Washington, 434 U.S. 497, 503 (1978). However, the Double Jeopardy Clause also protects a defendant's right to have his or her trial completed by the particular tribunal he or she has chosen. Id. This right, however, does not, in certain circumstances, prevent a retrial following a mistrial. For example, if the defendant moved for a mistrial or otherwise consents to a mistrial, the

4

defendant can be reprosecuted unless he can demonstrate that the prosecutor or the judge provoked the mistrial. Oregon v. Kennedy, 456 U.S. 667, 676 (1982); United States v. Johnson, 55 F.3d 976, 978 (4th Cir. 1995). This principle is consistent with the Supreme Court's consistent refusal to allow a criminal defendant to claim double jeopardy from a later proceeding where the defendant was responsible for terminating the initial proceeding for reasons unrelated to factual guilt or innocence. See Ohio v. Johnson, 467 U.S. 493 (1984) (double jeopardy does not protect a defendant who pled guilty to a lesser included offense because the defendant's efforts contributed to the separate disposition of the counts); United States v. Scott, 437 U.S. 82 (1978) (defendant suffers no injury cognizable under the Double Jeopardy Clause if the government is permitted to appeal a dismissal of part of an indictment because the defendant deliberately sought termination of the proceedings against him on a basis unrelated to factual guilt or innocence); Jeffers v. United States, 432 U.S. 137 (1977) (plurality opinion) (no double jeopardy violation where petitioner opposed the government's motion to consolidate the petitioner's trials on two indictments).

In this case, the district court declared a mistrial only after Hickman's motion for severance. As the mistrial was a necessary consequence of his severance motion, Hickman consented to the mistrial; indeed, counsel for Hickman indicated he had "no objection" to the district court's ruling. (J.A. 41). Because Hickman consented to the mistrial and because the record does not reflect that the government or the district court provoked the mistrial, Hickman's second trial did not violate the Double Jeopardy Clause of the Fifth Amendment.

B

Hickman also argues that he was denied a fair trial because the district court violated Rule 614(c) of the Federal Rules of Evidence by improperly questioning witnesses at trial. We disagree.

Under Rule 614(c), objections to the court's interrogation of witnesses is to "be made at the time or at the next available opportunity when the jury is not present." Fed. R. Evid. 614(c). We have held that "the failure of . . . counsel to object to any of[the district court's] questioning at trial precludes our review of this issue on appeal."

5

Stillman v. Norfolk & W. Ry. Co., 811 F.2d 834, 839 (4th Cir. 1987). One exception to this rule, allowing appellate review, is "[w]here a trial judge's comments [are] so prejudicial as to deny a party an opportunity for a fair and impartial trial." Id. (citation and internal quotes omitted). In setting the parameters of this exception in Stillman, we cited a case in which the district court interrupted the witness to answer counsel's question himself, referred to the question as one that "any five-year old idiot" could answer, and then instructed counsel, "Don't waste my time and the jury's on that." Id. (internal quotes omitted). But even those highly inflammatory comments were not sufficiently prejudicial to permit appellate review absent an objection at trial. Id.

In this case, Hickman claims that the district court erred by posing "fifty-seven questions of witnesses at the second federal trial." Appellant's Br. at 32. The specific questions that Hickman objects to need not be recited here. Suffice it to say that the record reflects that the district court's questions were proper, as they were designed to ensure that the case was presented in such a way as to be understood by the jury. Because the district court's questioning at trial was not so prejudicial as to deny Hickman a fair trial, Hickman's failure to object to the district court's questioning is fatal to his claim.[1]

C

Hickman contends that he was denied the effective assistance of counsel because his trial counsel: (1) failed to object to the district court's granting of the mistrial; (2) failed to object to the district court's questioning of witnesses; and (3) conducted inadequate cross-examination.

A claim of ineffective assistance of counsel should be raised by a 28 U.S.C. § 2255 motion in the district court and not on direct appeal,

_____

[1] We also note that the district court gave the jury several curative instructions concerning its interrogation of witnesses. For example, the district court instructed the jury that "[a]ny question that I have made or ruling--question that I've asked or ruling that I've made during the trial should not be interpreted by you as indicating what your verdict should be. I don't have any position as to the outcome of the case." (J.A. 178).

6

unless it "conclusively appears" from the record that defense counsel did not provide effective representation. United States v. Fisher, 477 F.2d 300, 302 (4th Cir. 1973); see also United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992), cert. denied, 113 S. Ct. 1342 (1993).

Because it does not conclusively appear from the record that Hickman received ineffective assistance of counsel, we do not address this claim on direct appeal. Hickman may bring these claims in a § 2255 motion should he so desire.

D

At sentencing, the district court attributed five kilograms of crack to Hickman, resulting in a base offense level of forty. See United States Sentencing Commission, Guidelines Manual , § 2D1.1(c)(2) (Nov. 1993). Hickman contends that assignment of this amount of crack to him was clearly erroneous based on his knowledge of and involvement in the conspiracy. The quantity of controlled substances involved in a drug offense, to a large degree, determines the calculation of the sentencing range under the sentencing guidelines. See USSG § 2D1.1(c). To arrive at the proper drug quantity, the guidelines require consideration of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." USSG § 1B1.3(a)(1)(A). In cases involving jointly undertaken criminal activity, such as the conspiracy involved in this case, the guidelines also require consideration of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG§ 1B1.3(a)(1)(B). Thus, in conspiracies involving drug offenses, the quantity of controlled substances for which each participant will be held accountable may vary. See USSG § 1B1.3, comment. (n.2). The commentary to the relevant conduct guideline explains:

> Because a count may be broadly worded and include the conduct of many participants over a period of time, the scope of the criminal activity jointly-undertaken by the defendant (the "jointly-undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's

7

accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement). The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.

Id. Accordingly, to identify the proper sentencing range for a participant in a conspiracy to distribute drugs, the district court must determine the scope of the criminal activity the defendant agreed to jointly undertake. Id. Then, the district court must determine whether the conduct of others was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant. Id. When an issue regarding the amount of drugs is properly raised, the district court must make an independent resolution of this factual issue at sentencing. See USSG § 6A1.3(b), p.s.; United States v. Morgan, 942 F.2d 243, 245 (4th Cir. 1991), cert. denied, 113 S. Ct. 829 (1992). The government bears the burden of establishing the quantity of crack attributable to Hickman and must do so by a preponderance of the evidence. See United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). Determining the reasonable foreseeability and quantity of crack are factual inquiries, and hence our review is limited to ascertaining whether the factual findings of the district court are clearly erroneous. See United States v. Banks, 10 F.3d 1044, 1057 (4th Cir. 1993), cert. denied , 114 S. Ct. 1850 (1994).

Initially, we note that the district court did not make specific findings as to the scope of Hickman's agreement and what conduct of others was both in furtherance of, and reasonably foreseeable in connection with, the conspiracy. Instead, the district court found that Hickman was accountable for at least five kilograms of crack in rather conclusory terms:

8

I heard the evidence in this trial and in the Steve Hickman trial, and those are two coconspirators. I can rely on the facts from each of those trials and I do. I believe that by a preponderance of the evidence that at least five kilograms of crack cocaine have been proven attributable to this defendant. . . .

Well, now I listened to the first trial that ended in a mistrial, and I listened to the whole Steven Hickman trial. I listened to Stanley Hickman's trial, and I've sentenced probably two dozen other people, all had factual basis in it. . .. I think he was a--the evidence supports the finding by a preponderance of the evidence that he was an active coconspirator in the conspiracy and I believe knew the nature and extent of the drug trafficking. . . . And there was plenary testimony from other coconspirators that Stanley Hickman was alert and involved and in a position of authority in this. That's my factual finding.

(J.A. 124-27).[2]

Although the district court's factual findings were no paradigm of precision,[3] we believe the record reflects that five kilograms of crack was within the scope of Hickman's agreement and reasonably foreseeable to him. First, the overall conspiracy in which Hickman was a part distributed at least thirty-seven kilograms of crack. Second, there is evidence in the record that Hickman personally participated in transactions that totaled between 4.45 and 4.92 kilograms of crack. In light of these facts, coupled with the evidence of Hickman's ongoing relationship with the principal leaders of the conspiracy, his drug activities in New York, and the district court's finding that Hickman

---

[2] During his sentencing, Steve Hickman was held accountable for thirty-seven kilograms of crack for his participation in the conspiracy.
[3] The district court's conclusory findings skirt the precipe for reversible error. When confronted with a similar issue in the future, the district court should make specific findings as to the scope of the defendant's agreement and what conduct of others was both in furtherance of, and reasonably foreseeable in connection with, the conspiracy.

"knew the nature and extent of the drug trafficking," (J.A. 127), the record supports the attribution of five kilograms of crack to Hickman.

III

Hickman raises several other arguments that he contends should be resolved in his favor. We have reviewed these assignments of error and find them to be without merit. Accordingly, for the reasons stated herein, Hickman's convictions and sentence are affirmed.

AFFIRMED

10