UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4785

VERN ODELL CRAWFORD,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia at Harrisonburg.
Jackson L. Kiser, Senior District Judge.
(CR-95-70108)

Argued: June 3, 1997

Decided: August 29, 1997

Before HALL and MICHAEL, Circuit Judges, and
TILLEY, United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Barry Ray Taylor, SCIALDONE & ASSOCIATES, Vir-
ginia Beach, Virginia, for Appellant. Michael Emile Karam, Tax
Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Appellee. **ON BRIEF:** Claude M. Scialdone, G.
Paul Martin, Third Year Law Student, SCIALDONE & ASSO-
CIATES, Virginia Beach, Virginia, for Appellant. Loretta C. Argrett,

Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Robert P. Crouch, Jr., United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Vern Odell Crawford was convicted of two counts of willful failure to file a federal tax return in violation of 26 U.S.C. § 7203 and one count of obstruction of justice in violation of 18 U.S.C. § 1503. He appeals those convictions on several bases. Finding no reversible error, we affirm but will remand so that the district court may consider the motion for a new trial which was filed after this appeal was noticed.

I.

During 1989-90, Appellant Vern Odell Crawford operated a variety of businesses in Elkton, Virginia. These businesses included a grocery store and gasoline station, an automobile wrecker service, a used car and truck business, and a cattle and horse farm. He also owned several rental properties in the area. Crawford paid all of his employees in cash and transacted much of his business in cash. Up until May 1992, he did not deduct social security or taxes from his employees' pay.

Crawford filed timely tax returns from 1979 to 1983. Beginning in 1984, however, he either failed to file or filed late returns. For the years 1987, 1991, 1992, 1993 and 1994, Crawford filed no tax returns. He filed late returns from 1984 through 1986. For 1988 and the prosecution years, 1989 and 1990, Crawford did not have his

2

returns prepared until May 18-19, 1992 and did not file them until May 22, 1992 (postmarked on May 19, 1992).

On May 18, 1992, Jack Higginbotham, a special agent for the IRS, contacted Crawford to tell him that he needed to talk to Crawford about his tax liability for the years 1988 through 1991. That evening Crawford went to his accountant's home and told his accountant that he needed to file the returns for those years. The two, along with Crawford's wife, prepared the returns throughout the night and mailed them, along with payment checks, on May 19, 1992 before Crawford met with Mr. Higginbotham.

The investigation continued and a grand jury proceeding was held in December 1992. The night before that hearing, Patricia Gail Littleton, an employee of the Crawfords and a paid informant for the state police, went to Crawford's home. She testified that he instructed her how to answer questions to the grand jury and made a statement which she interpreted as a threat should she not comply. Another witness, Tina Marie Shifflett, the girlfriend of Crawford's son, testified that Crawford told Littleton to go and tell the truth. After Littleton testified before the grand jury, Crawford came to see her and asked her what questions the grand jury had asked. Littleton also testified that Crawford said that he would get a transcript of her testimony and would know what she said.

Another former employee, Diane Meadows, testified at trial that she was approached by Crawford and his family after she left his employ. She was asked whether government agents had been to see her. She responded that they had, that she had told them about her wages ($4.00 an hour) and the method in which she was paid (cash) while she worked for Crawford. She also told Crawford that the agents showed her a paper she had signed while working for him stating that she would be responsible for her own taxes. She testified Crawford responded that "someone had crossed him by them having that paper."

II.

A.

Crawford first argues that there is insufficient evidence to sustain his convictions for failure to file federal tax returns and for obstruc-

3

tion of justice. "In reviewing the sufficiency of the evidence to support a conviction, the relevant question is `whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989) (citations omitted).

1. Failure to file

Crawford was prosecuted under 26 U.S.C. § 7203 which makes it a crime to "willfully fail to pay[ ] such estimated tax or tax, [or] make such return . . . at the time or times required by law." To prove a violation of § 7203, the Government must show that the defendant was (1) required to file a return; (2) failed to file the return; and (3) that the failure to file was a willful failure. United States v. Ostendorff, 371 F.2d 729, 730 (4th Cir.), cert. denied, 386 U.S. 982 (1967). The Supreme Court has determined that wilfulness under the statute means "voluntary, intentional violation of a known legal duty." Cheek v. United States, 498 U.S. 192, 201 (1991).

Crawford contends that there is insufficient evidence to sustain his conviction because he filed his tax returns for 1989 and 1990 after an IRS agent contacted him to set up an appointment to discuss his tax liability for those years but before the agent informed him that the investigation was criminal in nature. In support of his contention, Crawford states that he is functionally illiterate and that he is totally dependent on others for his bookkeeping, reporting and filing activities. He states that he was not aware that he had failed to file and thought that he had filed. Further, Crawford cites section (20)(122) ¶ 2 from the IRS manual in support of his position. That provision states:

> Compliance is achieved when a taxpayer makes a diligent effort to meet the requirement of the law. The law requires that the taxpayer take affirmative action to meet his/her requirements. Sometimes, the taxpayer takes sufficient action to meet the requirements but, because of some unforeseen intervening event, is unable to do so. Affirmative action recognizes that the obligation to meet the requirement

4

is ongoing and requires that the taxpayer continue to attempt to meet the requirements, even though late.

Even if this provision could be read to support Crawford's position, the manual does not confer any substantive rights on taxpayers but is instead only an internal statement of penalty policy and philosophy. See, e.g., Unites States v. Caceras, 440 U.S. 741 (1979); United States v. Groder, 816 F.2d 139, 142 (4th Cir. 1987). In addition, delinquent filing of a return does not relieve a tax payer of criminal liability. United States v. Ming, 466 F.2d 1000, 1005 (7th Cir.), cert. denied, 409 U.S. 915 (1972); United States v. McCormick, 67 F.2d 867, 868 (2nd Cir. 1933), cert. denied, 291 U.S. 662 (1934). Crawford filed his tax returns on time from 1979-83 and he filed late or not at all from 1984-94. Evidence that a defendant has filed delinquent tax forms before or no tax forms at all can be evidence of willfulness. See, e.g., United States v. Greenlee, 517 F.2d 899, 903 (3rd Cir.), cert. denied, 423 U.S. 985 (1975); United States v. Farris, 517 F.2d 226, 229 (7th Cir.), cert denied, 423 U.S. 892 (1975); United States v. Upton, 799 F.2d 432, 433 (8th Cir. 1986). There was sufficient evidence to sustain a conviction based on a§ 7203 violation.

2. Obstruction of Justice

Crawford challenges the sufficiency of the evidence to support his conviction for obstruction of justice under 18 U.S.C. § 1503. The three elements of that crime are (1) that a judicial proceeding was pending; (2) that the defendant had knowledge of the judicial proceeding; and (3) that the defendant acted corruptly, that is, with the intent to influence, obstruct, or impede that proceeding in its due administration of justice. United States v. Grubb, 11 F.3d 426 (4th Cir. 1993). The Government's evidence consisted of testimony from Patricia Gail Littleton that Crawford instructed her how to answer questions before the grand jury. Further, Littleton testified that Crawford made the statement that "if he found out who went up there and told things on him, he would have them taken care of," which Littleton interpreted as a threat of bodily harm. Crawford claims that Littleton's testimony was internally inconsistent and that it was contradicted by the testimony of Tina Marie Shifflett. This is basically an attack on the credibility of Littleton and "assessing the credibility of witnesses is within the province of the jury." United States

5

v. Johnson, 55 F.3d 976, 979 (4th Cir. 1995). Generally, unless there is a serious deficiency in the evidence, "this court is bound by the credibility determinations of the jury." United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). A review of the testimony reveals that any inconsistencies in Ms. Littleton's testimony are not serious in nature and are such that the jury could certainly choose to believe her testimony over Tina Marie Shifflett's testimony.

B.

Crawford alleges that the failure to disclose information about Littleton's status as a paid informant for the local police violated the Brady rule and violated the Joint Discovery and Inspection Order reached by the parties and entered by the trial court. Before trial, Crawford's counsel allegedly asked the Assistant U.S. Attorney whether Patricia Gail Littleton had any agreements with the government or the local police. The Assistant U.S. Attorney allegedly replied that there were none. In fact, Ms. Littleton had been paid almost $1400 over two years to be an informant for the Rockingham County Sheriff's Department. The Virginia State Police provided the funding for the payments and compiled a file documenting the meetings with Littleton. This arrangement was first revealed to Crawford's counsel during Littleton's direct examination. The trial court allowed a fifteen minute recess to give Crawford's counsel time to review the documents and also allowed Crawford to recall Littleton as an adverse defense witness. Crawford's attorney did not indicate to the court that he needed additional time to review the documents but moved for a mistrial on the basis that the Government committed a Brady violation and therefore deprived Crawford of due process. The trial court denied the motion. "A district court's refusal to grant a mistrial will be reversed only for an abuse of discretion." United States v. Guay, 108 F.3d 545, 552 (4th Cir. 1997).

The Brady rule requires that the prosecution disclose exculpatory evidence and information which could be used to impeach Government witnesses if the information is material. Information is material if, with the disclosure, there would have been a "`reasonable probability' of a different result." Kyles v. Whitley , 115 S. Ct. 1555, 1566 (1995). The Supreme Court has further stated that

6

> [t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."

Id. (citations omitted). When disclosure has come late in the game, this Court has stated that "[n]o due process violation occurs as long as Brady material is disclosed to a defendant in time for its effective use at trial." United States v. Smith Grading and Paving, Inc., 760 F.2d 527, 532 (4th Cir.), cert. denied, 474 U.S. 1005 (1985). In this case, Crawford's attorney was able to cross-examine Littleton on her status as a paid informant and was able to recall her as an adverse defense witness later in the trial. Although, the information about her status as a paid informant was brought out and Crawford was able to use the information in closing argument, he argues that he was (1) deprived of the opportunity to further investigate Littleton's background for impeachment material; (2) denied the opportunity to explore an entrapment defense; (3) denied the opportunity to explore illegal search and seizure arguments; and (4) was unable to use the information in opening statement. Crawford, however, must show that at least one of these avenues, if he had been allowed to explore it, would have resulted in a reasonable probability of a different outcome. He has made no such showing.

Crawford also asserts for the first time on appeal that the failure to reveal that Littleton had a serious drinking problem in the past, had been charged with crimes several times, had convictions in the Virginia court system, and had failed to report income from Crawford on her federal tax forms, was a Brady violation. The information concerning Littleton's drinking habits and her tax filing situation were brought out on cross-examination. At trial, Crawford did not object to the Government's failure to disclose the information regarding these topics. He has therefore failed to preserve this argument.

Failure to disclose the prior criminal convictions and charges is likewise not a Brady violation. According to the documents submitted

7

in the Joint Appendix, each of the charges involved automobile violations and, therefore, did not relate to credibility in such a way as to "undermine confidence in the outcome of the trial."

C.

Crawford claims that the trial judge's failure to give the jury an instruction on Littleton's status as a paid informant was an abuse of discretion. At trial, Crawford neither requested such an instruction nor objected when none was given. Therefore, he can not be heard to complain unless the failure to give such an instruction is plain error under Rule 52(b) of the Federal Rules of Civil Procedure. The trial court's failure to give such an instruction, sua sponte, in this case is not plain error. See, e.g., United States v. Bosch, 914 F.2d 1239, 1247-48 (9th Cir. 1990) (finding that the failure to give a paid information instruction, sua sponte, is not plain error); United States v. Cook, 102 F.3d 249, 252 (7th Cir. 1996) (stating that the decision of whether to give such an instruction, even in the face of a request from counsel, is discretionary with the trial judge).

D.

1. Prosecutorial delay

Crawford alleges that he has been prejudiced by the pre-indictment delay in this case. Because the delay occurred before Crawford became the "accused," the Sixth Amendment does not apply. United States v. Marion, 404 U.S. 307 (1971). However,"the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [appellant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." Id. at 324.

The trial court held a hearing on prosecutorial delay out of the presence of the jury. At the hearing, the agent responsible for the investigation during 1993-95 testified that the case spent much time during those years being reviewed by various individuals within the IRS and the Justice Department in order to determine the best theory of prose-

8

cution. He stated that by 1993 he had about 90% to 95% of the information actually used in this prosecution but, at that time, the investigation was targeted toward making a tax evasion or false return case. Much of the information needed to prosecute such a case was not received until after 1993, with some bank records not subpoenaed until six months to a year preceding the trial. The trial judge determined that the defense had shown neither substantial prejudice or improper prosecutorial motive for the delay and we agree.

2. Jencks Act violation

The Jencks Act provides, in pertinent part,

> [w]henever any statement is delivered to a defendant pursuant to this section, the court in its discretion . .. may recess proceedings in the trial for such a time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

18 U.S.C. § 3500(c). In this case, 92 pages of material concerning Littleton's position as an informant for the local police was given to Crawford's attorney when Littleton took the stand. Crawford moved for a mistrial based on the government's failure to provide this material earlier and the trial court denied this motion (discussed, supra, Part II.B.). Instead, the court recessed the proceedings for fifteen minutes to give counsel an opportunity to review the documents. Crawford made no objection that the time given was insufficient when the proceedings resumed. In addition, the court allowed Crawford to recall Littleton later in the trial as an adverse defense witness.

Crawford did not make a contemporaneous objection that the fifteen minute recess was insufficient to allow proper review of the material. Because of the failure to object, we review this matter for plain error under Rule 52(b). We find no plain error here. Although the fifteen minute recess may not have been entirely sufficient, the trial court allowed the witness to be recalled as an adverse defense witness later in the trial. Any prejudice resulting from the short length of the recess was certainly removed by Crawford's opportunity to recall the witness at a later time.

9

3. Trial judge's questions

Crawford claims that the trial judge abused his discretion in questioning a key defense witness, Tina Marie Shifflett. Shifflett is the witness who contradicted Littleton's testimony concerning what Crawford told Littleton the night before she was to testify before the grand jury. During Shifflett's testimony, the trial judge asked her ten questions.* Crawford contends that these questions reveal a bias

_____

*The following are the questions and answers (not all occurred in one exchange):

COURT: Now, why did it take you from the end of `89 to 1992 to come up with the 1989 records?

SHIFFLETT: Well, we had several businesses and I just got behind.

COURT: Well, that's about three years.

SHIFFLETT: Yeah.

COURT: Were you behind three years on your record keeping?

SHIFFLETT: I guess you could say that, yes.

COURT: What efforts were made to help you become current?

SHIFFLETT: Well I called the accountant, Doug, to help me several times, but I never got no reply.

COURT: Did you go to Mr. Odell [sic] and say I can't handle this, get somebody else to do it?

SHIFFLETT: No.

COURT: What training have you has in bookkeeping, Ms. Shifflett?

SHIFFLETT: None.

COURT: Well, how to you hold yourself out to be a bookkeeper if you've has no training?

SHIFFLETT: I don't call myself a bookkeeper.

COURT: Well, what do you call yourself?

SHIFFLETT: I'm just trying to help them out.

COURT: If they asked you to translate Chinese into

10

against the witness and that the last question "If they [the Crawfords] asked you to translate Chinese into English, would you try to do that?" was the most prejudicial.

This Court has stated that "if the trial judge's behavior whether in commenting or in interrogating witnesses during trial reaches such a level of prejudice `that it denied any or all the appellants a fair, as distinguished from a perfect, trial,' a new trial is required." United States v. Parodi, 703 F.2d 768, 776 (4th Cir. 1983) (citations omitted). In view of Ms. Shifflett's answers to the Court's earlier questions, we do not believe the final question was prejudicial.

E.

After the trial, Crawford discovered that Littleton had allegedly attempted to get at least four people to commit perjury regarding the circumstances of an accident which resulted in a driving while intoxicated charge against her. Based on this evidence, Crawford contends that he should be granted a new trial.

First, the government states that this issue has been presented to, and not yet resolved by, the trial court. Therefore, the government asserts that this issue is not properly before this Court. We agree and will, therefore, remand to the district court for consideration of this issue.

The timing of the motion for a new trial presents a jurisdictional question which we must resolve in determining whether other issues are properly before us. Federal Rule of Criminal Procedure 33 provides, in pertinent part, "[a] motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case." Federal Rule

_____

English, would you try to do that?

SHIFFLETT: If it would help them, yes.

(J.A. 360-61, 366).

11

of Appellate Procedure 4(b) provides that motions based on newly discovered evidence which are filed before or within 10 days after entry of judgment render notices of appeal ineffective. Federal Rule of Criminal Procedure 45 provides that computation of time for a period under 10 days is calculated by starting with the day following the event and then counting forward, excluding weekends and holidays. Federal Rule of Appellate Procedure 26 provides that, when computing periods under 7 days, weekends and holidays are excluded but that, when computing longer periods, those days are included. The motion for a new trial in this case was entered 12 calendar days after the entry of judgment. In this instance, we compute time for filing according to the rule in Federal Rules of Appellate Procedure. Therefore, the motion was filed outside of the ten day window provided in Rule 4(b) and this court has jurisdiction to consider the appeal.

F.

Crawford alleges that the district court imposed a fine of $100,000 without properly considering the factors enumerated in 18 U.S.C. § 3572(a). Section 3572(a) states that the sentencing court, in determining whether to impose a fine, the amount of the fine, and the timing and the method of payment, shall consider (1) the defendant's income, earning capacity, and financial resources; (2) the burden which will be imposed on the defendant and any dependents; (3) any pecuniary loss inflicted on others by the offense; (4) whether restitution is ordered and the amount of the restitution; (5) the need to deprive the defendant of illegally obtained gains from the offense; (6) the expected costs to the government of confinement and supervision; (7) whether the defendant can pass the cost of the fine onto others; and (8) if the defendant is an organization, the size of the organization and the efforts taken by the organization to discipline any agent responsible for the offense. This Court has stated that failure of the district court to enter factual findings on these factors can so inhibit appellate review as to warrant that the sentence be vacated and the case remanded so that such findings can be made. United States v. Harvey, 885 F.2d 181 (4th Cir. 1989). In this case, the district judge found that Crawford had the ability to pay the fine (J.A. 591). In addition, the district court adopted the findings in the pre-sentence report [PSR]. The PSR set out IRS estimated income for the defendant for 1984 through 1990. It also stated that Crawford and his family owned

12

property worth approximately one million dollars. Factual findings set out in a PSR and adopted by the district court may be sufficient for sentencing purposes. United States v. Castner , 50 F.3d 1267, 1277 (4th Cir. 1995). Furthermore, Crawford did not object to the imposition or calculation of the fine at sentencing. Therefore, he has waived review absent plain error. Id. This Court has affirmed fines under § 3572(a) when the district court adopted factual findings in a PSR which were sufficient to support the § 3572(a) factors and the defense failed to object. See, e.g., id.; United States v. Taylor, 984 F.2d 618 (4th Cir. 1993).

III.

For the reasons stated above, we affirm the judgment of the district court and remand the case so that the district court may consider the motion for a new trial.

AFFIRMED AND REMANDED

13