**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4976

DARNELL ELLIOTTE,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-97-203)

Submitted: June 9, 1998

Decided: June 30, 1998

Before MURNAGHAN, NIEMEYER, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert D. Finch, Jr., Axton, Virginia, for Appellant. Helen F. Fahey,
United States Attorney, John S. Davis, Assistant United States Attor-
ney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Darnell Elliotte appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C.A.§ 922(g)(1) (West 1994 & Supp. 1998). Finding no reversible error, we affirm Elliotte's conviction.

The Government's evidence at trial established that Daryl Jefferson ("Jefferson"), a paid informant for the Richmond police, arranged to buy $2500 worth of crack cocaine from Elliotte. Jefferson arrived at the meeting point followed by police, with a concealed recorder on his person and carrying $2500 in marked "buy money." Elliotte was driving a Nissan Altima. Elliotte drove Jefferson to a park, at which point Elliotte stopped the car. An unidentified man (the "robber") entered the backseat of the car. Jefferson did not know the robber, and Elliotte claimed not to know the robber either. The robber asked Jefferson and Elliotte whether they were looking for the drug supplier. When Elliotte answered affirmatively, the robber said that he had the drugs with him, and told Elliotte to drive away from the park.

After the three men had driven away, the robber pulled out a gun, put it to Jefferson's head, and demanded all his money. Jefferson gave the robber the $2500 along with his jewelry, and Elliotte also gave the robber some money. The robber continued to point the gun only at Jefferson, and told Elliotte to stop the car. The robber exited the car, walked into an alley, and tucked the gun into his shorts. Elliotte denied having set Jefferson up, and insisted that they had both been robbed. Elliotte stated that he was going to get his gun, and was going to "straighten" the robber.

After Elliotte let Jefferson out, police officers followed Elliotte to a house a few blocks away from the original meeting point. Elliotte entered the house for a few minutes, then got back in his car and drove to a convenience store. After Elliotte bought groceries at the convenience store, police stopped him. The police found that a bill Elliotte was carrying matched the serial number of one of the bills in the buy money given to Jefferson. They arrested Elliotte for robbery. Upon searching Elliotte, the police found $588 in cash. The trunk of

2

the Altima contained $900 in $50 bills. The police compared the serial numbers of the photocopied buy money to those of the money seized from Elliotte, and determined that all of the money in the trunk was buy money. Of the $588 in Elliotte's pocket, $530 of it was buy money.

The trunk of the Altima also contained a loaded Ruger 9 millimeter semiautomatic pistol. The gun was partially on top of and touching the buy money. Both the gun used by the robber and the gun found in the Altima's trunk were black and of similar size.

In his defense, Elliotte called his girlfriend, Shirley Carrington. Carrington testified that she was the owner of the Altima. However, Elliotte traded in his previous car to help Carrington buy the Altima, had his own keys, used the car several times a week, and did not need Carrington's permission to use the car. Carrington claimed that the gun in the Altima was hers, given to her by a friend whose phone number and address she did not know. Carrington stated that she did not pay her friend for the gun, did not have any idea how to use the gun, and did not know whether it was loaded.

Carrington testified that she kept the gun in the trunk of whichever one of her two cars she was driving. She testified that she kept it in her car for protection at work and at home. Carrington testified that she never told Elliotte about the gun. When asked why she kept the gun in her car to protect her house, she stated that she did not know.

The district court found Elliotte guilty. The court noted that the evidence was clear that the gun and the money from the robbery were in the back of the Altima. The court noted that whether or not the gun was the same gun the robber had was irrelevant, but that it was very likely Elliotte did know the robber, that they split the proceeds, and that Elliotte put the money in the back of the car. The court found Carrington "inherently unbelievable," and further found that even if it were her gun, Elliotte knew about its presence in the car.[1] On

_____

[1] The district court's conclusion about Carrington's credibility is not reviewable. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

3

appeal, Elliotte contends that the evidence was insufficient to find that he knowingly possessed the gun.[2]

In reviewing a sufficiency of the evidence challenge to a conviction, this court inquires whether "`any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Johnson, 55 F.3d 976, 979 (4th Cir. 1995) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The evidence is construed in the light most favorable to the Government, drawing all favorable inferences from it, and taking into account both circumstantial and direct evidence. See Johnson , 55 F.3d at 979.

"Possession" under 18 U.S.C.A. § 922(g)(1) can be established by showing constructive possession. See United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992). Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the firearm or the premises where the firearm is located. See United States v. Wilson, 107 F.3d 774, 779-80 (10th Cir. 1997); Johnson, 55 F.3d at 979; Blue, 957 F.2d at 107.

When viewed in the light most favorable to the Government, the evidence shows that a reasonable trier of fact could find beyond a reasonable doubt that Elliotte knowingly possessed the firearm. The evidence established that Elliotte, along with the robber, planned an armed robbery of Jefferson, as shown by the large quantity of "buy money" in the Altima and in Elliotte's pocket. The gun was found in the Altima, on top of and touching the buy money. Further, not only had Elliotte been in the Altima before, but he drove the car on a regular basis, had his own key, and helped to buy the car. Thus, the district court reasonably concluded that Elliotte exercised dominion and control over the gun and had knowledge of its presence. See United States v. Hobbs, 136 F.3d 384, 390-91 (4th Cir. 1998); Wilson, 107 F.3d at 780; Johnson, 55 F.3d at 979. Accordingly, there was sufficient evidence to show that Elliotte knowingly possessed the gun. See 18 U.S.C.A. § 922(g)(1); Blue, 957 F.2d at 107.

_____

**2** Elliotte stipulated that he was a convicted felon, and that the firearm was shipped and transported in interstate commerce. See 18 U.S.C.A. § 922(g)(1).

4

We grant Elliotte's motion to submit the case on the briefs and dispense with oral argument. We affirm Elliotte's conviction.

AFFIRMED