**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 15-4579**

─────────────

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

      v.

DANIEL LAMONT MATHIS, a/k/a Gunna, a/k/a Mooch, a/k/a D-Man,

                Defendant - Appellant.

─────────────

**No. 15-4580**

─────────────

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

      v.

KWELI UHURU, a/k/a Travis Leon Bell, a/k/a K. Gunns, a/k/a
Black Wolf, a/k/a Babi,

                Defendant - Appellant.

─────────────

Appeals from the United States District Court for the Western
District of Virginia, at Charlottesville. Glen E. Conrad, Chief
District Judge. (3:14-cr-00016-GEC-JCH-1; 3:14-cr-00016-GEC-
JCH-4)

─────────────

Submitted: January 5, 2016      Decided: January 11, 2016

─────────────

Before MOTZ, DUNCAN, and DIAZ, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Larry W. Shelton, Federal Public Defender for the Western District of Virginia, Geremy C. Kamens, Acting Federal Public Defender for the Eastern District of Virginia, Frederick T. Heblich, Jr., Assistant Federal Public Defender, Charlottesville, Virginia, Paul G. Gill, Assistant Federal Public Defender, Richmond, Virginia, for Appellants. Anthony P. Giorno, United States Attorney, Christopher R. Kavanaugh, Ronald M. Huber, Jean B. Hudson, Assistant United States Attorneys, Charlottesville, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants Daniel Lamont Mathis and Kweli Uhuru appeal from the district court's order denying their motion to dismiss the superseding indictment pending against them on double jeopardy grounds. Finding no reversible error, we affirm.

I.

Appellants and their four codefendants are charged in a 36-count superseding indictment. The superseding indictment alleges, among other matters, that Appellants are members of a street gang and that members of this gang conspired with one another to conduct and participate in the affairs of the gang through a pattern of racketeering activity consisting of assaults, robberies, burglaries, kidnapping, carjacking, murder, drug trafficking, and obstruction of justice. All six Defendants proceeded to a jury trial. Trial commenced on May 4, 2015, and a 16-person jury was sworn by the district court. No party had sought an anonymous jury, and the 16 sworn jurors were selected from a non-anonymous jury panel of 134 individuals. On May 6, 2015, the district court gave its opening remarks to the jury, and the parties gave their opening statements.

That evening, counsel for the Government notified the court and defense counsel that it had a preliminary matter it wished to take up with the district court prior to the presentation of

3

evidence. During an in-chambers conference the next day, an agent with the Federal Bureau of Investigation (FBI) reported to the district court and counsel that he had learned that Uhuru had removed from the courtroom and taken to his jail cell a jury list containing personally identifying information for the entire 134-person jury panel; this jury list remained in Uhuru's possession overnight and for a total of at least 15 hours. The agent expressed concerns regarding the safety of the individuals on the jury list -- given that the jury panel was not anonymous -- and stated that his concerns were shared by higher ranking officials within the FBI, as well as members of the Virginia State Police and the Louisa, Virginia, County Sheriff's Department. The agent emphasized that these concerns were based at least in part on the believed affiliation between the Defendants and the "United Blood Nation," a street gang with a history of taking violent action with respect to trials.

The agent advised further that the FBI and other law enforcement agencies believed they had a duty to notify the 134 jury panel members -- whom the agencies believed to be at some level of risk as a consequence of Uhuru's actions -- of the release of their personal information. To avoid the possibility of a mistrial, however, the agent proposed that the members of the jury panel be advised of the removal of the jury list at the conclusion of the trial.

The district court also heard from counsel. Based on the concerns raised by the agent, several defense attorneys questioned the propriety of waiting until the trial's conclusion to notify the individuals on the jury panel and stated their beliefs that a mistrial was necessary. Other defense attorneys noted that the personal information of jury panel members is routinely shared with criminal defendants and did not move for or opposed a mistrial. Counsel for the Government stated the Government's view that there were no grounds for a mistrial. The district court then elicited input from the United States Marshals in charge of the security detail for the trial. They advised counsel and the court of Uhuru's believed gang connections and recruitment activities, but stated there was no evidence he had shared the jury list with anyone else.

Following a recess, counsel for the Government reported that the FBI remained of the opinion that the individuals on the jury list should be contacted regarding the dissemination of their personal information but that the Government opposed a mistrial. After hearing again from the FBI agent and considering his concerns and the observations of the Marshals and hearing from counsel, the district court determined that it would send letters to members of the jury panel advising them that their personal information had been "viewed to a somewhat greater extent by criminal defendants than is usually the case

5

in the voir dire process." J.A. 222. The court elected to send the letters the following morning rather than wait until the conclusion of the trial. Consistent with this ruling, the district court sent letters to each member of the jury panel.

After the district court announced its decision to send the letters, the four Defendants other than Mathis and Uhuru moved for mistrials. Trial recommenced on May 12, 2015, and the district court granted the mistrial motions of the four Defendants other than Mathis and Uhuru. Mathis and Uhuru concurred with the district court's proposal to conduct a voir dire of the 16 sworn jurors to determine whether they thought they could proceed as jurors in light of the information relayed in the court's letters to them.[1]

---

[1] The letters advised the 16 jurors that:

It is routine in all trials, both civil and criminal, for counsel to share personal information about prospective jurors with their clients, including criminal defendants. This is designed to make sure that attorneys and their clients are able to make intelligent decisions in matters of jury selection. In this case, however, information about all jury panel members was disseminated among the defendants to a greater degree than is usually the case in federal jury selection, in that a jury list was retained by one defendant overnight.

The court has made appropriate inquires and finds no reason for special concern. Nonetheless, we wanted to advise you of this circumstance. If you have any additional questions, you may use the contact number
(Continued)

6

After the district court, counsel for Mathis and Uhuru, and counsel for the Government met with and heard from all 16 jurors individually, the district court excused 3 jurors but advised that it was prepared to proceed to trial with the remaining 13 jurors. The court heard argument from counsel for Mathis and Uhuru regarding their objections to 5 of the 13 jurors but stated it was convinced all 5 were capable of continuing to serve on the jury. The court also stated its willingness to proceed to trial with a jury of less than 12 persons if the parties could agree to do so. Mathis and Uhuru elected, however, to move for mistrials, and the district court granted their motions and declared a mistrial in the case.

Trial was rescheduled for February 1, 2016. Mathis and Uhuru moved to dismiss the superseding indictment on the grounds that a retrial was barred by the Double Jeopardy Clause of the Fifth Amendment, claiming that they were goaded into moving for mistrials by the district court and the Government. The district court denied the motion, concluding that Mathis and Uhuru failed to prove its actions were intended to goad them into seeking mistrials and that there was no evidence that the

---

previously provided. The court will discuss this matter with you upon your return to court on Tuesday.

J.A. 229.

7

Government had any desire for a mistrial or intended to cause one.

Mathis and Uhuru noted timely interlocutory appeals from the district court's order,[2] and this court granted the Government's motion for expedited briefing. On appeal, Appellants challenge the district court's rejection of their double jeopardy claim.

## II.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause protects a criminal defendant from facing "repeated prosecutions for the same offense." Oregon v. Kennedy, 456 U.S. 667, 671 (1982). "In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn." Baum v. Rushton, 572 F.3d 198, 206 (4th Cir. 2009). "As such, the constitutional protection against double jeopardy embraces the defendant's valued right to have his trial completed by a particular

---

[2] This court has jurisdiction over the appeals under the collateral order exception to the final judgment rule. See Midland Asphalt Corp. v. United States, 489 U.S. 794, 798-99 (1989); United States v. Jefferson, 546 F.3d 300, 308-10 (4th Cir. 2008).

8

tribunal." Id. (internal quotation marks and alteration omitted).

Nevertheless, the right to have a particular jury decide guilt or innocence once jeopardy has attached is not absolute. "There are circumstances under which retrial is permitted after a criminal proceeding has ended in mistrial." Sanders v. Easley, 230 F.3d 679, 685 (4th Cir. 2000). Where, as here, a defendant obtains a mistrial, "the conditions for invocation of the double jeopardy bar are strict." United States v. Wentz, 800 F.2d 1325, 1327 (4th Cir. 1986). A defendant can avoid a second trial only if the "the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial." Kennedy, 456 U.S. at 676. "[C]onduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, . . . does not bar retrial absent intent . . . to subvert the protections afforded by the Double Jeopardy Clause." Id. at 675-76. Appellants bear the burden of proving specific intent to provoke a mistrial. United States v. Smith, 441 F.3d 254, 265 (4th Cir. 2006).

A district court finding as to intent to cause a mistrial is a factual finding this court must accept unless it is clearly erroneous. United States v. Johnson, 55 F.3d 976, 978 (4th Cir. 1995). Under the clear error standard of review, this court will reverse only if "left with the definite and firm conviction

9

that a mistake has been committed." United States v. Chandia, 675 F.3d 329, 337 (4th Cir. 2012) (internal quotation marks omitted).

We conclude after review of the record and the parties' briefs that Appellants have not met their burden to show clear error by the district court. Contrary to Appellants' assertions, the record makes clear that, in sending the letters, the district court was motivated by a desire to be open and honest with the jury panel members about potential security concerns and concerns potentially bearing on their ability to serve as jurors, not by a desire to cause a mistrial. The record also makes clear that the district court orally confirmed on multiple occasions that it was ready and willing to proceed to a trial for Appellants, and we reject as without merit Appellants' suggestions that we should deem these oral confirmations of only nominal relevance and conclude that the statements reflected the court's intent to goad. We also reject as without merit Appellants' challenge to the district court's determination that the Double Jeopardy Clause did not bar retrial even if the decision between requesting a mistrial and potentially accepting a jury of less than 12 persons qualified as a Hobson's choice. Accord United States v. Green, 636 F.2d 925, 929 (4th Cir. 1980) (noting that when a prosecutor or the district court "acts erroneously but without such a malevolent

10

purpose [i.e., that of acting to provoke a mistrial], retrial is not precluded even though the error was such as to present the defendant with a Hobson's choice between giving up his first jury and continuing a trial tainted by prejudicial, judicial[,] or prosecutorial error" (internal quotation marks omitted)).

Appellants also argue in the alternative that Government counsel and the FBI agent provoked their mistrial motions. We conclude, however, that the record supports the district court's determination that the agent and Government counsel did not act to provoke a mistrial. The agent notified the parties and district court about law enforcement's concerns regarding the individuals on the jury list in light of Uhuru's actions and believed gang connections because law enforcement had a duty to notify the jury panel members, whom it believed to be at some level of risk as a consequence of Uhuru's actions. The agent, however, proposed that the panel members be notified of the disclosure of their personal information after the conclusion of the trial to ensure that the trial proceedings were not disrupted.

The record also makes plain that Government counsel had neither the desire nor intent to cause a mistrial. Government counsel voiced opposition to the granting of a mistrial on multiple occasions and even affirmed the Government's willingness to sever Mathis and Uhuru from their codefendants

11

and proceed to trial against them alone.  Further, at the point the agent addressed the district court and counsel at the in chambers conference, Government counsel had made an opening statement for the Government and had subpoenaed its witnesses to testify; given these circumstances, there was no reason for counsel to desire a mistrial.  Appellants' arguments to the contrary are rejected, and we further reject as meritless their remaining extraneous arguments for overturning the district court's order.

## III.

Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process. The clerk's office is directed to issue the mandate forthwith.

AFFIRMED